# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-0389

ANTONIO PACHECO, APPELLANT,

V.

SLOAN D. GIBSON,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 6, 2013)                    (Decided July 17, 2014)

*Paul M. Schoenhard* of Washington, D.C., for the appellant.

*Deborah A. Hoet*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Kenneth A. Walsh*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL, MOORMAN, LANCE, DAVIS, SCHOELEN, PIETSCH, BARTLEY, and GREENBERG, *Judges*.

PER CURIAM. PIETSCH, *Judge*, filed a concurring opinion. KASOLD, *Chief Judge*, filed an opinion concurring in part and dissenting in part, in which HAGEL, MOORMAN, and LANCE, *Judges*, joined. LANCE, *Judge*, filed an opinion concurring in part and dissenting in part, in which KASOLD, *Chief Judge*, and HAGEL, *Judge*, joined. DAVIS, *Judge*, filed an opinion concurring in part and dissenting in part, in which SCHOELEN, BARTLEY, and GREENBERG, *Judges*, joined. GREENBERG, *Judge*, filed an opinion concurring in part and dissenting in part.

PER CURIAM: World War II veteran Antonio Pacheco appeals through counsel[1] the September 22, 2011, Board of Veterans' Appeals (Board) decision that denied an effective date prior to January 23, 2002, for (1) a right leg and hip disability, (2) pelvic asymmetry, (3) dependents' educational assistance (DEA) benefits, and (4) special monthly compensation (SMC). Mr. Pacheco argues that an earlier effective date is warranted pursuant to 38 C.F.R. § 3.157(b) (allowing for an

---

[1] Mr. Pacheco initially represented himself in this matter and filed his own brief, but secured pro bono counsel for oral argument, which was held on November 6, 2013, before a panel of the Court.

earlier effective date based on the submission of certain medical reports) and 38 C.F.R. § 3.156(c) (allowing for an earlier effective date based on newly discovered service department records). In a panel opinion issued January 16, 2014, the Court reversed the Board's effective date decision and held that, as long as a pension claim previously has been allowed as required in § 3.157(b), a VA examination report will constitute the requisite informal claim for increase or reopening under § 3.157(b)(1). *Pacheco v. Shinseki*, 26 Vet.App. 413, 417 (2014). The Secretary filed a motion seeking en banc review on the interpretation of § 3.157(b) because it involved an issue of exceptional importance. He argues that the plain meaning of § 3.157(b) compels a result different from that rendered by the panel, and he alternatively argues that, to the extent that the regulation is ambiguous, the Court should defer to his interpretation thereof. Mr. Pacheco filed a response on April 3, 2014. The Secretary's motion for en banc review was granted on May 15, 2014.

For the reasons discussed below, we hold that § 3.157(b) is ambiguous and deference to the Secretary's interpretation of this regulation is warranted. We also, however, exercise our discretion to remand the matter for the Board to address in the first instance a possible earlier effective date for Mr. Pacheco's benefits under § 3.156(c). *See Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) (Court has discretion to remand for initial adjudication an issue raised for the first time on appeal). Accordingly, the Court's January 16, 2014, opinion is withdrawn, and the September 22, 2011, Board decision on appeal will be set aside and the matter remanded for further adjudication.

## I. BACKGROUND

Mr. Pacheco served honorably on active duty in the U.S. Army from January 1942 to November 1945. He reports that, during combat service in 1942 in the Pacific Theater, he took cover in a fox hole while his base was taking fire and injured his right leg and hip when fellow soldiers jumped in and landed on him. On February 28, 1974, Mr. Pacheco sought VA benefits for his injuries. In a July 1974 rating decision, he was awarded non-service-connected pension benefits, but denied disability compensation benefits because entitlement was "not shown by [the] evidence of record." Record (R.) at 1370. Mr. Pacheco also was informed that his service medical records appeared to have been destroyed in the July 1973 fire at the National Personnel Records Center (NPRC).

2

In October 1977, Mr. Pacheco again filed for compensation benefits based on his right leg and hip disability. In February 1978, the Secretary located service department records–morning reports–from Mr. Pacheco's military units that indicated he had been hospitalized and "taken sick" several times during 1943. R. at 1295. In March 1978, however, his disability compensation claim was denied again on the merits because the morning reports did not specify any diagnosis for his hospitalization or sickness. The Secretary also determined that Mr. Pacheco was no longer eligible for non-service-connected pension because his income was too high.

Mr. Pacheco attempted to reopen his disability compensation claim based on his leg and hip injuries again in April 1982, October 1988, February 1989, and September 1995, but these attempts were denied. Moreover, in December 1998, the NPRC informed Mr. Pacheco that it had again attempted to locate his service department records, but that it "was unable to locate any alternat[iv]e record sources containing remarks pertaining to diagnosis or treatment." R. at 913. Mr. Pacheco sought VA medical treatment for his disabilities, and on May 11, 2001, a VA physician assistant examined him and noted that he had "sever[e] DJD [(degenerative joint disease)]" that was "probabl[y] post[-]traumatic." R. at 614. In January 2002, Mr. Pacheco submitted another request to reopen his previously denied claim.

Based on that request and the May 2001 VA medical examination record, the Board reopened Mr. Pacheco's claim for disability compensation and remanded the matter to obtain a medical opinion on the relationship between his current disabilities and service. In November 2004, a VA medical examiner opined that the current disabilities were related to service, and, the following month, Mr. Pacheco was granted service connection for his right leg and hip disability, and pelvic asymmetry, at disability ratings of 90% and 10%, respectively, as well as DEA and SMC. In August 2005, Mr. Pacheco was awarded an effective date for these benefits of January 23, 2002, the date the Secretary received his request to reopen. In October 2008, Mr. Pacheco submitted additional service department records.

Mr. Pacheco sought an earlier effective date in his appeal to the Board, which was denied, and he appealed to the Court. Before the Court in February 2011, the Secretary argued that remand was warranted for the Board to address whether the May 2001 VA medical examination record constituted an informal claim to reopen under § 3.157(b), and, on that basis, the Court remanded the

issue of an earlier effective date in June 2011. *Pacheco v. Shinseki*, No. 10-1991, 2011 WL 2516195, at \*2-\*3 (U.S. Vet. App. June 24, 2011).

On remand, in the September 2011 decision now on appeal, the Board again denied Mr. Pacheco entitlement to an effective date prior to January 23, 2002, for his service-connected disabilities. The Board determined that the May 2001 VA treatment record "could not be considered a claim under 38 C.F.R. § 3.157(b)(1)." R. at 10. In so concluding, the Board stated that Mr. Pacheco "does not meet the threshold criteria" for § 3.157(b), because (1) a "formal claim for pension or compensation had not been allowed (or denied because the disability was noncompensable)," and (2) he was not service connected for the disabilities at issue at the time of the May 2001 VA medical examination record. R. at 9-10. This appeal followed.

## II. ANALYSIS

### A. Earlier Effective Date Under 38 C.F.R. § 3.157(b) and (b)(1)

Mr. Pacheco argues that the Board should have awarded him an earlier effective date under § 3.157(b) and (b)(1). That provision states:

> (b) Claim. *Once a formal claim for pension or compensation has been allowed* **or** *a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree,* receipt of one of the following will be accepted as *an informal claim for increased benefits* **or** *an informal claim to reopen.* In addition, receipt of one of the following will be accepted as an informal claim in the case of a retired member of a uniformed service whose formal claim for pension or compensation has been disallowed because of receipt of retirement pay. The evidence listed will also be accepted as an informal claim for pension previously denied for the reason the disability was not permanently and totally disabling.
>
> > (1) Report of examination or hospitalization by Department of Veterans Affairs or uniformed services. *The date of outpatient or hospital examination or date of admission to a VA or uniformed services hospital will be accepted as the date of receipt of a claim.* The date of a uniformed service examination which is the basis for granting severance pay to a former member of the Armed Forces on the temporary disability retired list will be accepted as the date of receipt of claim. The date of admission to a non-VA hospital where a

4

> veteran was maintained at VA expense will be accepted as the date of receipt of a claim, if VA maintenance was previously authorized; but if VA maintenance was authorized subsequent to admission, the date VA received notice of admission will be accepted. *The provisions of this paragraph apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established* **or** *when a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission*.

*Id.* (emphases added).

Mr. Pacheco argues that he meets the requirements of the first sentence of subsection (b) because he (1) previously was awarded non-service-connected VA pension benefits and (2) filed a claim to reopen, and that he meets the last requirement of the last sentence of subsection (b)(1) because he filed his claim to reopen within one year of the May 2001 VA medical examination record. He therefore argues that the plain language of the regulation entitles him to an effective date of May 11, 2001, the date of his VA medical examination record.

The Secretary responds that the plain language of the regulation compels a different result. Specifically, he asserts that the language regarding claims for pension or compensation that have been "allowed" is paired with the language regarding an informal claim for "increased benefits," and the language regarding claims for disability compensation that have been "disallowed" for the service-connected disability not being compensable in degree is paired with the language regarding an informal claim to "reopen." Accordingly, under his interpretation of the first sentence of subsection (b), a previous allowance of pension can result in an earlier effective date for claims for increased benefits, but not for claims to reopen–which require a previous disallowance for the service-connected disability not being compensable in degree. Specific to Mr. Pacheco's case, the Secretary argues that the May 2001 VA medical examination record cannot serve as a claim to reopen because his claim was not previously disallowed for being not compensable in degree.

Alternatively, should the Court find the plain language ambiguous, the Secretary argues that deference to his interpretation of the regulation is warranted, because it is not "'plainly erroneous or inconsistent with the regulation'" and there is "'no reason to suspect that it does not reflect the agency's fair and considered judgment on the matter in question.'" *Smith v. Nicholson*, 451 F.3d

5

1344, 1350, 1351 (Fed. Cir. 2006) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945), and *Auer v. Robbins*, 519 U.S. 452, 462 (1997)).

If the meaning of § 3.157(b) and (b)(1) is clear from its plain language, that meaning controls and that is the end of the matter. *See Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006). On the other hand, if the meaning is unclear from the regulation's plain language, deference will be afforded to the Secretary's interpretation of his own regulation, so long as it is not plainly erroneous or inconsistent with the regulation, and there is no reason to suspect that it does not reflect the Secretary's fair and considered judgment on the matter in question. *See Smith*, 451 F.3d at 1350-51. When assessing the meaning of a regulation, words should not be read in isolation, but should be read in the context of the regulatory structure and scheme. *King v. Shinseki*, 26 Vet.App. 484, 488 (2014).

We find that the plain language of 38 C.F.R. § 3.157(b) and (b)(1) is subject to both parties' proffered interpretations and, accordingly, we hold that the provisions are ambiguous. *See Tropf*, 20 Vet.App. at 321 n.1 (stating that a regulation is ambiguous where "the application of the ordinary meaning of words and rules of construction to the plain language of the regulation fails to answer the question at issue"); *see also Smith*, 451 F.3d at 1350 (holding that a regulation is ambiguous where the language "still leaves the pertinent inquiry unresolved"); *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047-48 (D.C. Cir. 1997) (holding that ambiguity is a conclusion reached when the question presented is not answered "at the level of literal language"); *Sears v. Principi*, 16 Vet.App. 244, 250 (2002) (Steinberg, J., concurring) (finding 38 C.F.R. § 3.157(b) to be "a confusing tapestry" with unclear meaning).

As to Mr. Pacheco's interpretation, taking the first sentence of subsection (b) and the last phrase of subsection (b)(1) in isolation supports his view that entitlement to earlier effective dates might be permissible on reopened compensation matters because of a previously allowed pension. But a reading of the plain language in the context of its structure could also fairly reflect the Secretary's interpretation: that the previous pension allowance may form the predicate for an earlier effective date for an increased pension, but not a reopened compensation matter. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning–or ambiguity–of certain words or phrases may only become evident when placed in context."); *Brown v. Gardner*, 513 U.S.

6

115, 118 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context . . . ."); *King*, 26 Vet.App. at 488; *see also* 38 C.F.R. § 3.157(b) (2014) (second and third sentence). The literal language of the regulation could support either interpretation, and therefore it fails to answer the question at issue, such that it is ambiguous. *See Smith*, 451 F.3d at 1350; *Tropf*, 20 Vet.App. at 321 n.1.

Given the ambiguity in the regulation, the Secretary's interpretation will be afforded deference so long as it is not plainly erroneous or inconsistent with the regulation, and there is no reason to suspect that it does not reflect his fair and considered judgment on the matter in question. *See Smith*, 451 F.3d at 1350-51. Here, the Secretary's interpretation must be understood within the context of the history of § 3.157(b) and its predecessor, 38 C.F.R. § 3.216(a). Prior to 1951, § 3.216(a) provided for earlier effective dates for claims for increase based upon the submission of certain medical reports. In 1951, a second sentence was added, allowing earlier effective dates for claims to reopen as well, where the claim had been "disallowed for the reason that the service-connected condition was not 10 percent disabling in degree." 38 C.F.R. § 3.216(a) (1952).

Such an addition reflects the Secretary's desire to allow earlier effective dates for those whose previously service-connected condition worsened, but not those who had yet to establish service connection. Moreover, the specific language employed by the Secretary reflects his practice at the time that claims for benefits for disabilities that were service-connected yet noncompensably disabling were considered "disallowed." *See Sears*, 16 Vet.App. at 252 n.3 (Steinberg, J., concurring) (providing a potential explanation for why, "at the time that the Secretary promulgated § 3.157(b) in 1961, he may have considered that claims for disability compensation were 'disallowed' when service connection was found but a compensable rating was denied").

Upon the promulgation of § 3.157(b) in 1961, the two separate sentences of § 3.216(a) were combined, but there is no indication that the logic behind the evolution of this language was abandoned. *See* 26 Fed. Reg. 1561, 1571 (Feb. 24, 1961). In fact, the Secretary recently acknowledged in the *Federal Register* that he has *never* departed from an interpretation that the language of § 3.157(b) regarding claims to reopen is paired with the language regarding disability compensation claims that previously had been disallowed for service-connected disabilities being not compensable in degree. *See* VA Compensation and Pension Regulation Rewrite Project, 78 Fed.

7

Reg. 71,042, 71,069 (Nov. 27, 2013) ("[Section] 3.157(b) has never applied to permit the reopening of a claim that was denied because the claimed injury or disease was not service connected.").[2]

We note that the approach of considering a claim "disallowed" if a disability was service connected but noncompensable in degree is no longer practiced. *See* 78 Fed. Reg. at 71,069 (noting that "VA formerly considered claims where VA granted service connection for an injury or disease, but rated the disability as 0 percent disabling[,] as having been disallowed or denied," but stating that "VA no longer considers such [noncompensably rated] claims disallowed" and proposing to remove the language at issue).[3] Accordingly, unlike the old practice, where a claim disallowed for not being compensable in degree had to be reopened when a claimant sought a compensable rating, the current practice is to allow a claim for increase in such circumstances. *See Wingard v. Shinseki*, 26 Vet.App. 334, 346 (2013) (noting that Secretary's assignment of noncompensable rating enables claimants to file claims for increase, rather than claims to reopen). Although the current practice renders the notion of "reopening" a noncompensably rated disability a nullity, this stems from the archaic language of the regulation, not from an arbitrary interpretation. *Cf. Sears*, 16 Vet. App. at 252 n.3 (Steinberg, J., concurring). Significantly, in the context in which this language was originally implemented, the Secretary's paired interpretation is understandable and not unreasonable.

Moreover, contrary to Judge Davis's contention in his separate opinion, the Secretary's interpretation does not rob the last phrase of subsection (b)(1) of its meaning. *See Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) (noting that a regulation must be interpreted "so that effect is given to all its provisions" (internal quotation marks omitted)); 38 C.F.R. § 3.157(b)(1) ("The provisions of this paragraph apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established *or when a claim specifying*

---

[2] We share Judge Greenberg's view that deference can be a dangerous permission slip for the arrogation of power by administrative agencies, *post* at 28, but such concern is unfounded here, where the Secretary has maintained consistency in interpreting and applying his own regulation. Moreover, this consistency reflects that the Secretary's interpretation is his fair and considered judgment on this matter, contrary to the view expressed in Judge Davis's separate opinion.

[3] Although Judge Davis's separate opinion searches to find an inconsistency in the Secretary's statements, the Secretary stating in 1993 that it has been his "consistent practice" to assign a noncompensable rating for service-connected disabilities not compensable in degree, Zero Percent Disability Evaluations, 58 Fed. Reg. 28,808, 28,808-09 (May 17, 1993), in no way contradicts the Secretary also acknowledging that there was a historical practice of considering such claims disallowed for purposes of reopening. *See* 78 Fed. Reg. at 71,069.

*the benefit sought is received within one year from the date of such examination, treatment or hospital admission*." (emphasis added)).  Given the Secretary's interpretation, the last phrase of subsection (b)(1) would have an effect when, for example, a claimant who has a previous allowance of pension files a claim for increased pension; that claimant may obtain an earlier effective date if he submits his formal claim within one year of a related VA medical report, per that last phrase of subsection (b)(1).  It also would have an effect for a claimant who has been denied pension because his disability is not permanently and totally disabling.[4]  *See* 38 C.F.R. § 3.157(b) (third sentence); VA Adjudication Procedures Manual M21-1MR, pt. III, subpt. II, ch. 2, § D.18.b.[5]

---

[4]    The Secretary's en banc motion acknowledged these possible applications of the regulation, despite Judge Davis's separate opinion asserting otherwise.  *See* Secretary's En Banc Motion at 3.  Moreover, the Secretary's statement in the *Federal Register* did not "concede[ ]" that claims for increased pension do not fit into the framework of § 3.157(b), *post* at 22; rather, the Secretary stated that VA has "never" excluded claims for increased pension from this regulation, and he proposed alteration of the regulatory language "to avoid such misapplication."  78 Fed. Reg. at 71,069.

[5]    The last sentence of § 3.157(b)(1) was added for clarification in 1987 based on a VA General Counsel unpublished opinion.  *See* Medical Reports as Informal Claims/Recoupment of Separation Pay, 52 Fed. Reg. 3,286 (Feb. 3, 1987).  The Secretary recently explained that the addition was aimed at clarifying that the view prior to 1962–that a claimant service connected for one disability would file a claim for increase if he desired service connection for a separate disability–had been long extinct.  *See* 78 Fed.Reg. at 71,069 (noting that language supporting such a view "has long since been repealed").  Accordingly, although Judge Davis's separate opinion categorizes the term "increased benefits" in § 3.157(b) as broad, and it indeed had a broad meaning prior to 1962, the addition of the last sentence of subsection (b)(1) made clear that such a broad meaning did not survive 1962, and–to the extent that the VA General Counsel was confronted with lingering questions over the scope of that term–it is not "incomprehensible" for such clarification to be provided in 1987.  *Post* at 25 n.14.

(We shall have to agree to disagree with Judge Davis's comment in his separate opinion that our characterization of the Secretary's recent statement in the *Federal Register* is "inaccurate."  *Post* at 25.  The Secretary was specifically discussing the circumstances that the last sentence of subsection (b)(1) "was intended to govern."  78 Fed.Reg. at 71,069.  As the Secretary's statement addresses the intentions behind the last sentence of subsection (b)(1), it seems more inaccurate to say, as Judge Davis's separate opinion does, that the Secretary's statement "do[es] not include *any* discussion regarding the 1987 amendment" that added the last sentence of subsection (b)(1).  *Post* at 25-26 (emphasis in original).)

Furthermore, although Judge Davis's separate opinion cites Transmittal Sheet 744 for the proposition that in 1987 VA "intended to make clear that the regulation was to apply to claims for service connection for new conditions and not merely to claims for increases for disabilities already service connected" (*post* at 26), we do not read the transmittal sheet as conveying the Administrator's intention to contravene the plain language of the regulation, which expressly limits the applicability of § 3.157(b) to claims for increase or claims to reopen.  (Although the regulation is ambiguous on the question at issue–whether a previous allowance of pension affects the effective date of the award of a reopened compensation matter–it is plain that § 3.157(b) applies only to claims for increase or claims to reopen.  *Contra post* at 26 n.15.)  Rather, we read the transmittal sheet as simply noting the Administrator's assumption that claimants generally desire increased benefits when a medical report chronicles a worsening service-connected disability, and that such an assumption is not extended to other circumstances unless specifically followed up by identification of the benefit sought (e.g., increased pension).

9

Overall, although the Secretary's interpretation of a paired structure is not compelled by the plain language of the regulation, it reasonably tracks the structure of the regulation and certainly is not inconsistent with it. *See Cathedral Candle Co. v. U.S. Intern. Trade Comm'n*, 400 F.3d 1352, 1364 (Fed. Cir. 2005) ("While [the agency's] interpretation is by no means compelled by the language of the regulation, it is not contrary to the express terms of the regulation, nor is it at odds with the purposes served by the regulation. . . . [It] is reasonable and is therefore binding on us."). Under his authority to promulgate rules and regulations, *see* 38 U.S.C. § 501(a), the Secretary is entitled to acknowledge informal claims and authorize earlier effective dates based on those informal claims–but it is not plainly erroneous to limit that authorization to certain types of claims or contexts, and the limit provided by the Secretary's interpretation comfortably fits the structure and terms of § 3.157(b) and (b)(1), particularly in light of the regulatory history and consistent practice of the Secretary. *See Auer*, 519 U.S. at 461 (finding that the agency's interpretation was not "plainly erroneous or inconsistent with regulation" where the critical phrase "comfortably bears the meaning the Secretary assigns"); 78 Fed. Reg. at 71,069.

As to whether the Secretary's interpretation reflects his fair and considered judgment on this matter, Mr. Pacheco has not noted any application of § 3.157(b) and (b)(1) by the Secretary that is inconsistent with the Secretary's proffered interpretation, and we are not aware of any. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal); *see also* 78 Fed. Reg. at 71,069. We do note that the Secretary argued for a remand of this case in 2011 for the Board to discuss the potential applicability of § 3.157(b). But agreeing that remand is warranted for a *Board discussion* of § 3.157(b) is not the equivalent of conceding Mr. Pacheco's entitlement to an earlier effective date based on § 3.157(b). The Board must discuss potentially applicable regulations, and issues reasonably raised by the record, independent of whether those regulations and issues will ultimately result in entitlement to a particular benefit. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (1991) (holding that the Board must discuss all potentially applicable provisions of law and regulation); *see also Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (holding that the Board must address all issues raised by the claimant or reasonably raised by the record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). Succinctly stated, the Secretary's previous arguments for remand in this case do not cause us to

suspect a lack of fair and considered judgment in the Secretary's current interpretation.

Accordingly, we hold that deference is warranted to the Secretary's interpretation of § 3.157(b) and that the Board's determination that § 3.157(b) was not applicable to the effective date of Mr. Pacheco's award of disability compensation is not in violation of law or otherwise clearly erroneous. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). Although Mr. Pacheco desires an earlier effective date for an award based on a claim to reopen, there is no dispute that he did not have a claim disallowed for the reason that the disability was not compensable in degree. Accordingly, he fails to meet the criteria of § 3.157(b).

We note that the Board erroneously stated that pension had not been allowed in his case, but we find such a misstatement not prejudicial because–as held above–the Secretary's reasonable interpretation of § 3.157(b) and (b)(1) provides no relationship between Mr. Pacheco's previous allowance of pension and the effective date to be assigned to an award made as a result of his claim to reopen his claim for disability compensation. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (holding that a remand is not required when it "would result in this Court's unnecessarily imposing additional burdens on the [Board and the Secretary] with no benefit flowing to the veteran"); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the appellant bears the burden of demonstrating prejudice on appeal).

### B. Earlier Effective Date Under 38 C.F.R. § 3.156(c)

When the Secretary determines that a veteran is entitled to benefits, the general rule is that the award becomes effective on either the date VA received the veteran's claim (or his claim to reopen) or the date he or she became eligible for the benefit, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400 (2014). However, 38 C.F.R. § 3.156(c) provides an exception to this general rule: When the Secretary decides a claim, but later receives "relevant official service department records" that existed but had not been associated with the file at the time it was decided, the Secretary "will

reconsider the claim." 38 C.F.R. § 3.156(c)(1) (2014).[6] If the Secretary awards benefits "based all or in part" on those late-arriving official service department records, then the award "is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later." 38 C.F.R. § 3.156(c)(3); *see Mayhue v. Shinseki*, 24 Vet.App. 273, 279 (2011) ("[A] claimant whose claim is reconsidered based on newly discovered service department records may be entitled to an effective date as early as the date of the original claim.").

Mr. Pacheco argues that, under § 3.156(c), he is entitled to an effective date of February 28, 1974, the date VA received his original claim for benefits for his disabilities. After all, in July 1974, when VA denied his claim, it did not yet have access to the Army records it obtained in 1978 or 2008 showing that he had been hospitalized and sick during 1943 (R. at 1288-1301, 196-200), or the 1998 NPRC letter summarizing those records (R. at 913). Mr. Pacheco argues that, because those records later contributed to his successful claim for benefits for his disabilities, § 3.156(c) mandates an effective date going back to his original claim on that issue.

We note that the service department records obtained in 2008 are not completely decipherable. *See* R. at 196-200. In any event, the Board did not determine whether the assignment of an earlier effective date based on those records, which were associated with the claims file after the December 2004 grant of service connection for residuals of a right leg and hip injury, would constitute "[a]n award based all or in part" on those records as required by § 3.156(c)(3). Despite receipt of potentially new service department records during the pendency of Mr. Pacheco's appeal of the assigned effective date of benefits, the Board did not address § 3.156(c) or whether the service department records received in 2008 were new and material. Because a decision on that issue would require factfinding generally outside our jurisdiction, *see* 38 U.S.C. § 7261; *Servello v. Derwinski*, 3 Vet.App. 196, 200-01 (1992) ("The role of an appellate court is not to serve as a de novo

---

[6] The regulation states in relevant part:

(1) Notwithstanding any other section in this part, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim notwithstanding paragraph (a) of this section.

38 C.F.R. § 3.156(c)(1). Paragraph (a) of § 3.156 defines new and material evidence. Generally, a veteran must submit new and material evidence to reopen a finally adjudicated claim. 38 C.F.R. § 3.156(a).

factfinder."), we will remand this matter to allow the Board to decide it in the first instance. *See Maggitt*, 202 F.3d at 1377 (Court has discretion to remand for initial adjudication an issue raised for the first time on appeal).

## C. Clear and Unmistakable Error (CUE)

Finally, Mr. Pacheco argues that a prior, unidentified Board decision contains CUE because, at the time of that decision, certain medical reports were not included in the record and the evidence shows that he was entitled to additional compensation based on his hip replacement surgery. Because these issues were not raised to or addressed by the Board in the decision on appeal, we lack jurisdiction to consider them. *See* 38 U.S.C. § 7111(e) (stating that a request for revision of a Board decision based on CUE shall be submitted directly to the Board); *Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002) ("[E]ach 'specific' assertion of CUE . . . must be the subject of a decision by the [Board] before the Veterans Court can exercise jurisdiction over it."); *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc) (noting that the "necessary jurisdictional 'hook'" for the Court is "a decision of the [Board] on the specific issue of [CUE]"). Mr. Pacheco is free, however, to file a motion for revision of the unidentified Board decision on the basis of CUE at any time. *See* 38 C.F.R. § 20.1404 (2014) (filing and pleading requirements for CUE motion).

## III. CONCLUSION

Upon consideration of the foregoing, the Court's January 16, 2014, opinion is WITHDRAWN, and the September 22, 2011, Board decision is SET ASIDE and the matter REMANDED for further adjudication.

PIETSCH, *Judge*, concurring: Like so many others, I find 38 C.F.R. § 3.157(b) singularly difficult to decipher, and I cannot understand why the Secretary did not long ago heed Judge Steinberg's warning that this regulation is "largely incomprehensible" and follow his suggestion to place it "near the top of the list for revision." *Sears v. Principi*, 16 Vet.App. 244, 250 (2002) (Steinberg, J., concurring). The Court in its per curiam opinion and Judge Davis both make excellent attempts at divining meaning from a grammatically nightmarish heap of conjunctions and crisscrossing modifiers. The Secretary's interpretation to which the Court defers, however, is the

most convincing.

The general meaning of the other regulation at issue in this case, 38 C.F.R. § 3.156(c), is much less in doubt. Its application to the unique facts of this case, however, raises a novel interpretative question. For reasons I will explain below, I do not think that it is appropriate to answer that question at this time. I therefore agree that the appellant's case should be remanded to the Board of Veterans' Appeals (Board) for it to consider, in the first instance, whether the appellant is entitled to use § 3.156(c) to achieve an earlier effective date for his disability benefits.

Pursuant to § 3.156(c)(1), "any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim." If VA then grants the claimant entitlement to the benefits he seeks, the effective date for those benefits is "the date entitlement arose or the date VA received the previously decided claim, whichever is later." 38 C.F.R. § 3.156(c)(3).

The appellant's claim was initially denied in 1974. Record (R.) at 1370. In 1978, VA obtained documents that appear to be "relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim," considered those documents, and again denied his claim. 38 C.F.R. § 3.156(c)(1); R. at 1285-87, 1290-1301. When, nearly 30 years later, VA finally granted his claim, it relied in part on his service department records. R. at 530-537. For that reason, the appellant believes, VA should apply § 3.156(c)(3) to the facts of his case. Proper application of that provision, he asserts, indicates that the effective date for his disability benefits should be in February 1974.

If the 1978 decision didn't exist, the appellant's argument would stand a good chance of succeeding. But that 1978 decision cannot be ignored. The question before the Court, then, is whether VA's 1978 decision foreclosed the appellant's eligibility for an effective date based on § 3.156(c)(3) even though VA was eventually persuaded to award him disability benefits in part by service department records that were extant but not in the record when it originally denied his claim

in 1974.[7]

Chief Judge Kasold believes that the rule of finality governs, and the finality of the 1978 decision, unless it is overcome by collateral attack, blocks VA from applying § 3.156(c)(3) to records obtained before that decision was issued. *Post* at 17 (citing *Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002)). Section 3.156(c), however, is an exception to finality, and the regulation does not specifically address what adjudicators should do when faced with a fact pattern like the one in this case. Proper interpretation of the regulation is at least reasonably debatable.

Which brings me to the reason why I believe that this issue should be remanded to the Board. The record reveals that VA has never considered whether § 3.156(c) applies to the appellant's case. The Board did not address the matter. The appellant, acting pro se at the time, did not raise it when he submitted his initial brief to the Court. The Secretary mentioned § 3.156(c) in his brief, but did not address the specific issue now before us. The appellant did not file a reply brief. The appellant, after obtaining counsel, brought the § 3.156(c) question to the Court's attention in a notice of supplemental authorities. He stated the issue, but provided no analysis.

The appellant's counsel briefly discussed the matter during an oral argument held by the original panel in this case. When the Secretary's counsel rose, she chose not to discuss § 3.156(c), and the panel did not ask her about the regulation or the appellant's arguments. The panel remanded the § 3.156(c) issue to the Board for it to consider it in the first instance. The Secretary, in his motion for full Court review, did not challenge that portion of the panel's decision. In his response to the Secretary's motion, the appellant argued that § 3.156(c) should apply to his case. As Chief Judge Kasold rightly notes, the appellant's argument was not thorough. *Post* at 17. The Secretary did not respond to the appellant, and the Court has not asked him to do so. To date, the Secretary has never presented argument concerning the § 3.156(c) issue in this case. There is no precedential decision of this Court discussing that issue, at least none that Chief Judge Kasold cites.

I do not necessarily disagree with Chief Judge Kasold's interpretation of § 3.156(c).

___

[7] In a May 2013 single-judge memorandum decision, the Court decided this issue under a set of facts that, for present purposes, are essentially identical to those in this case. The Court reached a conclusion very similar to the conclusion Chief Judge Kasold reaches in his partial dissent. *See Blubaugh v. Shinseki*, No. 12-0483, 2013 U.S. App. Vet. Claims LEXIS 703 (Vet. App., May 7, 2013). The Court's decision is currently on appeal at the U.S. Court of Appeals for the Federal Circuit. That tribunal heard oral argument on the matter on June 3, 2014.

However, because the Board and Secretary have not addressed the matter and the appellant has done so inadequately, my opinion is at present not well informed. The tenets of judicial restraint counsel me against foisting my uninformed view of this issue on posterity (and untold numbers of future claimants) in the absence of relevant precedent and in the face of virtual silence from the parties, especially when that silence can be remedied simply by sending this case back down. *See Michigan v. Long*, 463 U.S. 1032, 1067 (1983) (Stevens, J., dissenting) ("[A] policy of judicial restraint–one that allows other decisional bodies to have the last word in legal interpretation until it is truly necessary for this Court to intervene–enables this Court to make its most effective contribution to our federal system of government.").

When an issue is raised for the first time on appeal, the Court may decide it, remand it, or decline to address it. *Maggitt v. West*, 202 F.3d 1370, 1377-79 (Fed. Cir. 2000). When deciding how to proceed, the Court should be guided by the interests of the parties and its own interest in judicial economy. *Id.* All involved are better served if the Court remands the § 3.156(c) issue to the Board to decide. The appellant will have an opportunity to make a thorough argument supporting his position, the Board will get its interpretation of the regulation on paper, and the Court will have a firm grasp of the issue should it return to us at a later date. *See id.* at 1377 (stating that it is in VA's interest to "protect agency administrative authority" and noting that "even if the agency rejects the individual's arguments, in some instances a better record is made for appellant review of the agency decision"). I therefore agree that the § 3.156(c) issue should be remanded to the Board for it to consider in the first instance.

KASOLD, *Chief Judge*, with whom HAGEL, MOORMAN, and LANCE, *Judges*, join, concurring in part and dissenting in part: We fully concur with the per curiam opinion in its holding that deference is warranted to the Secretary's interpretation of § 3.157(b), and that § 3.157(b) is not applicable to the effective date of Mr. Pacheco's award of disability compensation. On the other hand, we dissent from the *Maggitt* remand regarding § 3.156(c). As there have been no newly discovered service records since the last final decision on the merits of Mr. Pacheco's claim in March 1978, we do not believe § 3.156(c) is for application. *See* 38 C.F.R. § 3.156(c)(1) (pertaining to service records that "had not been associated with the claims file" at the time of the previous

16

decision).

Mr. Pacheco argues that, pursuant to § 3.156(c), he is entitled to an effective date of February 28, 1974, the date the Secretary received his original claim for benefits for his disabilities. In support of his argument, he notes that, when his claim was denied in July 1974, the Secretary did not yet have access to the Army records that document his hospitalization and sickness during 1943 or the 1998 NPRC letter summarizing those records. Mr. Pacheco further argues that, because those later-obtained records contributed to his successful claim for benefits for his disabilities, § 3.156(c) mandates an effective date going back to his original claim on that issue.

Although Mr. Pacheco is correct that the July 1974 denial did not take into account the morning reports reflecting an in-service hospitalization, he fails to recognize that the last previously decided claim on the merits was a March 1978 denial of service connection that considered the morning reports, and that decision was not appealed and became final. Succinctly stated, Mr. Pacheco fails to demonstrate how a 1974 effective date is warranted in light of the intervening and final March 1978 rating decision that considered the morning reports. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc); 38 C.F.R. § 3.156(c)(1) (pertaining to service records that "had not been associated with the claims file" at the time of the previous decision); *see also Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc) (outlining the narrow exceptions to the rule of finality).[8]

---

[8] With regard to Judge Greenberg's discussion of equity, it is indisputable that equitable relief is unavailable where it is otherwise restricted by law. *See Rosenberg v. Mansfield*, 22 Vet.App. 1, 5 (2007) ("The [U.S.] Supreme Court has held that the Appropriations Clause of the Constitution, U.S. Const. art. I, § 9, cl. 7, precludes the judiciary from ordering an award of public funds to a statutorily ineligible claimant on the basis of equitable estoppel." (citing *OPM v. Richmond*, 496 U.S. 414, 430 (1990))), *aff'd sub nom. Rosenberg v. Peake*, 296 F. App'x 53 (Fed. Cir. 2008); *Andrews v. Principi*, 16 Vet.App. 309, 316 (2002) ("[*OPM*] held that payments from the Federal Treasury are limited to those authorized by statute. . . ."), *aff'd*, 351 F.3d 1134 (Fed. Cir. 2003). Congress specifically has ordered that the effective date of an award based on a claim to reopen "shall not be earlier than the date of receipt of application therefor," absent certain specific circumstances. 38 U.S.C. § 5110(a); *see Andrews*, 351 F.3d at 1138 ("Congress's intent is unmistakably clear that the effective date can be earlier than the 'date of receipt of application' only if 'specifically provided otherwise' in § 5110."); *see also Leonard v. Nicholson*, 405 F.3d 1333, 1337 (Fed. Cir. 2005) ("[Appellant] cannot receive disability payments for a time frame earlier than the application of his claim to reopen, even with new evidence supporting an earlier disability date. To hold otherwise would also vitiate the rule of finality . . . , [which] 'preclude[s] repetitive and belated readjudications of veterans' benefits claims.'" (quoting *Cook*, 318 F.3d at 1339)); *Sears v. Principi*, 349 F.3d 1326, 1331 (Fed. Cir. 2003) (finding it reasonable for Secretary to provide different effective date policies for claims "originally denied due to error or inattention on the part of the government" and claims in which new and material evidence "was not presented earlier, either due to inattention by the veteran or his representatives or subsequent advances in medicine and science"). Succinctly stated, assigning a 1974 effective date would contravene the

Since the March 1978 rating decision is final, Mr. Pacheco is foreclosed from arguing errors in the adjudication procedure leading up to that decision unless or until he files a motion for revision of that decision on the basis of CUE. *See* 38 U.S.C. § 5109A(a); 38 C.F.R. § 3.105(a) (2014). This is not to say that the March 1978 rating decision correctly applied the law, including § 3.156(c). Rather, the correctness of the March 1978 rating decision is simply not before the Court, as it was not before the Board. *See Jarrell v. Nicholson*, 20 Vet.App. 326, 330-32 (2006) (en banc) (holding that both the Court and the Board lack jurisdiction over claims not first presented to and adjudicated by the RO (citing *Godfrey v. Brown*, 7 Vet.App. 398, 410 (1995))). Mr. Pacheco failed to appeal that decision, and it therefore may be challenged only through a statutorily authorized collateral attack.[9] *See DiCarlo v. Nicholson*, 20 Vet.App. 52, 57-58 (2006) (citing *Cook*, 318 F.3d at 1337).

The 1998 NPRC letter and additional records received in October 2008 do not change our analysis. First, even if the 1998 NPRC letter summarizing already received records constituted a service department record, that letter did not exist in 1974 or 1978, such that it does not meet the enumerated criteria of § 3.156(c)(2), which notes that subsection (c)(1) does not apply to records that "did not exist when VA [previously] decided the claim." Moreover, the service records received in October 2008 are identical to those submitted in 1978, *compare* R. at 196, 198, and 200, *with* R. at 1294, 1297, and 1300; therefore, these records *were* previously associated with the claims file at the time the Secretary previously decided the claim, such that § 3.156(c) is not for application. *See* 38 C.F.R. § 3.156(c)(1) (pertaining to service records that "had not been associated with the claims file" at the time of the previous decision), (c)(3) (providing for effective date based on, inter alia, "the previously decided claim"); *cf. Voracek v. Nicholson*, 421 F.3d 1299, 1305 (Fed. Cir. 2005) (examining a record "on its face" to determine whether it was material).

Accordingly, although we concur with the holding of the per curiam order on § 3.157(b), we dissent to the remand based on § 3.156(c).[10]

---

law. *See OPM*, *Leonard*, and *Andrews*, all *supra*.

[9] If Mr. Pacheco believes that the final March 1978 rating decision contains CUE, he is free to file below a motion for revision of the rating decision based on CUE. *See* 38 C.F.R. § 20.1404.

[10] Although Judge Pietsch correctly notes that the Secretary has not presented his views on § 3.156(c) in this litigation, it is only because Mr. Pacheco raised the issue so late in the process. The issue could have been ignored entirely by the Court, *see Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at

LANCE, *Judge*, with whom KASOLD, *Chief Judge*, and HAGEL, *Judge*, join, concurring in part and dissenting in part: In addition to the views expressed by my dissenting colleagues on the issue of § 3.156(c), I dissent from the majority's decision to remand the ripe legal question of § 3.156(c)'s application to this case based on the facts as found by the Board, a question for which Mr. Pacheco explicitly seeks an answer in his favor. *See* Appellant's Response to Appellee's Motion for Full Court Review at 2 ("If, however, this Court decides to engage in Full Court Review, Mr. Pacheco respectfully requests that this Court exercise its authority to decide whether Mr. Pacheco is entitled to an earlier effective date of 1974 under 38 C.F.R. § 3.156(c)—he is."). Although "[e]xpediency may tip the scales when arguments are nicely balanced," *Woolford Realty Co., Inc., v. Rose*, 286 U.S. 319, 330 (1932), in this case, "[i]naction without more is not tantamount to choice." *Richard v. Credit Suisse*, 242 N.Y. 346, 351 (1926).

Absent a cognizable theory from the majority as to how § 3.156(c) could *ever* operate so as to provide an earlier effective date in the face of a final agency decision that considered the relevant service records, the Court does nothing more here than perpetuate the hamster wheel, asking the Board to spin it unnecessarily in the search for an earlier effective date that cannot exist as a matter of law. *See Coburn v. Nicholson*, 19 Vet.App. 427, 434 (2006) (Lance, J., dissenting) (noting that an unnecessary remand "perpetuates the hamster-wheel reputation of veterans law"); *see also* Michael P. Allen, *Significant Developments in Veterans Law (2004-2006) and What They Reveal About the U.S. Court of Appeals for Veterans Claims and the U.S. Court of Appeals for the Federal Circuit*, 40 U. Mich. J.L. Reform 483, 514 (2007) (noting that, "Congress created the Court to bring uniformity, transparency, and cohesion to veterans law through judicial review of executive action" and that the Court "was intended to be a 'lawgiver' in an area that had, historically, been immune from such common lawmaking").

---

successive stages of the appellate process . . . hinders the decision-making process and raises the undesirable specter of piecemeal litigation."), but, as one can see, that is not the case. Having accepted the issue, I note that the Secretary's position was argued in *Blubaugh v. Shinseki*, No. 12-0483, 2013 WL 1897179 (Vet. App. May 7, 2013), and to the U.S. Court of Appeals for the Federal Circuit in *Blubaugh v. Gibson*, Fed. Cir. No. 13-7119, and therefore is known to the public; it is consistent with the plain interpretation and applicable case law stated in the text of this separate statement. *See Tyrues v. Shinseki*, 26 Vet.App. 31, 33 n.3 (2012) (en banc) (noting that the Court may take judicial notice of pleadings filed in another case), *aff'd*, 732 F.3d 1351 (Fed. Cir. 2013).

DAVIS, *Judge*, with whom SCHOELEN, BARTLEY, and GREENBERG, *Judges*, join, concurring in part and dissenting in part: We agree with Part II.B and Part II.C of the majority opinion. We also agree with the majority's conclusion that the language of § 3.157 is not clear with respect to the issue presented in this case. *Ante* at 6. We respectfully dissent, however, from the majority's conclusion in Part II.A that the Court must defer to the Secretary's regulatory interpretation. Because the agency interpretation in this case overlooks and fails to provide a reasonable interpretation of the regulation's language, does not represent the Secretary's considered view, and does not resolve the patent ambiguity in the regulation in favor of the veteran, we would accord it no deference. *See Mason v. Shinseki*, 743 F.3d 1370 (Fed. Cir. 2014) (faced with an ambiguous regulation, the Court will give substantial deference to an agency's interpretation when it is (1) not clearly inconsistent with the regulation and (2) represents the agency's considered view on the matter); *see also Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("interpretive doubt is to be resolved in the veteran's favor").

The Secretary believes a "parallel structure" reading of § 3.157(b) essential to his interpretation. He contends that under this parallel structure, the first part of the first sentence of § 3.157(b) addresses two types of formal claims: (1) "a formal claim for pension or compensation that has been allowed," and (2) "a formal claim for compensation or pension that has been disallowed." Secretary's Motion (Mot.) for En Banc Review at 13 (quoting § 3.157(b)). The second part of the sentence states that receipt of one of the specified medical reports will be accepted as (1) "an informal claim for increased benefits" or (2) "an informal claim to reopen." *Id.* According to the Secretary, the first phrase in the first part of the sentence is paired with the first phrase in the second part of the sentence, and the second phrase in the first part of the sentence is paired with the second phrase in the second part. "This is the most logical reading," the Secretary contends, "because it is most logical to pair language regarding an 'informal claim to reopen' with language regarding a claim that was denied rather than with language regarding a claim that was allowed." Mot. for En Banc at 4.

Under the Secretary's interpretation, a veteran receiving disability compensation for a particular disability, thus falling into the "allowed" parallel, may file an informal claim for an increased rating for the service-connected disability. A veteran previously granted pension benefits,

thus falling into the "allowed" parallel, may file an informal claim for increased pension benefits. A veteran who filed a claim for disability compensation that was "disallowed," thus falling into the "disallowed" parallel may file a "reopened" claim, but only if his or her claim was "disallowed" because it was noncompensable under the schedule for rating disabilities. The Secretary contends that under § 3.157(b), these are the only circumstances under which a medical record may constitute an informal claim for increase or to reopen. *See* Mot. for En Banc at 6.

This construction would render superfluous the last phrase of the last sentence in § 3.157(b)(1). *See Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) (noting that a regulation must be interpreted "so that effect is given to all its provisions"). The final sentence of § 3.157(b)(1) states that the regulation applies "when such reports relate to examination or treatment of a disability for which service-connection has previously been established *or* when a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission." (Emphasis added.) The regulation's use of the disjunctive "or" signifies "alternative components." *McDowell v. Shinseki*, 23 Vet.App. 207, 220 (2009); *see Drosky v. Brown*, 10 Vet.App. 251, 255 (1997) ("The use of the word 'or' provides for an independent basis rather than an additional requirement."); *see also Viegas v. Shinseki*, 705 F.3d 1374, 1378 (Fed. Cir. 2013) (observing that a court should "eschew[ ] a 'strained construction' of a statute that 'would . . . ignore the disjunctive "or"' contained in the statutory text").

Yet the Secretary's contention that § 3.157(b) applies "*only* . . . to claims for compensation that relate to previously service-connected disabilities" (Mot. for En Banc at 14 (emphasis added)) reads out the alternative situation in which this regulatory section is applicable, namely, "when a claim specifying the benefit sought is received within one year from the date of such examination, treatment, or hospital admission."[11] If, as the Secretary urges, previous establishment of service connection were an indispensable requirement, then the language after "or" in § 3.157(b) is mere surplusage.

Such an interpretation is not permissible. The Secretary makes no effort to offer an

---

[11] The majority says that the last part of subsection (b)(1) applies to "when . . . a claimant who has a previous allowance of pension files a claim for increased pension." *Ante* at 9. This is diametrically counter to the Secretary's interpretation that this only applies to claims for compensation that relate to previous service connection denials.

explanation of how he interprets the last phrase of the last sentence in § 3.157(b)(1), or how this sentence falls within the parallel structure of the regulation that he advocates.

The Secretary's construction also fails to acknowledge § 3.157(b)'s use of the broad phrase "increased benefits" or explain why that broad language could not include Mr. Pacheco in the first parallel of the regulation's parallel structure. Under the Secretary's interpretation, the first parallel consists of veterans previously allowed compensation or pension who seek "increased benefits." 38 C.F.R. § 3.157(b) ("Once a formal claim for pension or compensation has been allowed . . .receipt of one of the following will be accepted as an informal claim for *increased benefits*.") (emphasis added). Mr. Pacheco claims that his May 2001 treatment report should be considered an informal claim for "increased benefits" because he was previously allowed pension and is therefore part of the "allowed" parallel.

The Secretary argues that the May 2001 treatment report cannot be an informal claim for increased benefits because he interprets the broad phrase "increased benefits" as restricted to increased compensation benefits in the case of veterans previously denied compensation and increased pension benefits in the case of veterans previously denied pension. Mot. for En Banc at 5-6. He argues that § 3.157(b) should not be interpreted to "pair" an allowed claim for pension with a claim for increase related to disability compensation. However, his own interpretation of the regulation would "pair" compensation and pension claims, requiring a veteran seeking increased pension benefits to show that he or she receives service-connected compensation.

Under the Secretary's construction of the regulation, which ignores the phrase beginning with "or" in the last line of § 3.157(b)(1), a veteran such as Mr. Pacheco, who was previously allowed non-service-connected pension and who wishes to obtain the earliest possible effective date of increased benefits under § 3.157(b), must show that the medical report "relate[s] to examination or treatment of a disability for which service connection has previously been established." 38 C.F.R. § 3.157(b)(1). *See* VA Compensation and Pension Regulation Rewrite Project, 78 Fed. Reg. 71,042, 71,069 (Nov. 27, 2013) (VA concedes that the § 3.157(b)(1) requirement that a report relate to a service-connected disability *improperly* imposes a service-connection requirement as to claims for increased pension). VA having admitted that § 3.157(b)(1) forces increased pension claimants to show their disability is service connected, the Secretary is hoisted on his own petard: The flaw he

22

identifies in Mr. Pacheco's interpretation, the pairing of compensation and pension claims, is integral to the Secretary's interpretation of the current regulation.

In addition, a close inspection of the Secretary's interpretation raises concerns about the "disallowed" parallel of the regulation, a "claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree." 38 C.F.R. § 3.157(b). Over 20 years ago, in 1993, the Secretary indicated that it was not his practice to deny a claim for disability compensation when a disability was noncompensable; rather, he stated that "it has been VA's *consistent practice* to [grant and] assign a zero percent evaluation whenever the [service-connected] condition does not meet the stated minimum requirements for compensable evaluation." Zero Percent Disability Evaluations, 58 Fed. Reg. 28,808, 28,808-09 (May 17, 1993) (emphasis added) (proposing to amend 38 C.F.R. § 4.31). The Secretary more recently indicated that, historically, VA would grant service connection and assign a noncompensable evaluation but "consider[]" or construe such a claim to be disallowed or denied. 78 Fed. Reg. at 71,069 ("VA formerly *considered* claims *where VA granted service connection for an injury or disease*, but rated the disability as 0 percent disabling[,] *as having been disallowed or denied*." (emphasis added)).

In contrast, however, Technical Bulletin 8-180, which VA cites for this proposition, indicates that such a claim would *actually* have been disallowed. *See* Claims for Increase and Reopened Awards, Technical Bulletin 8-180, ¶ 4 (Jun. 13, 1951) ("Where a claim has been finally disallowed for the reason that the service-connected condition was not 10% disabling in degree, . . . the report of hospitalization constitutes an informal claim to reopen."). Also, our colleagues in the majority cite a 1952 regulation, 38 C.F.R. 3.216(a), which the Secretary does not mention in his brief or his en banc motion, and conclude that "unlike the old practice, where a claim disallowed for the reason of not being compensable in degree had to be reopened when a claimant sought a compensable rating, the current practice is to allow a claim for increase in such circumstances." *Ante* at 8. However, the majority's view and the statement in Technical Bulletin 8-180 contradict the Secretary's 1993 *Federal Register* statement that its "consistent practice" was to grant service connection and assign a noncompensable evaluation and the Secretary's 2013 *Federal Register* statement that VA granted service connection but "considered" or construed it as a denial or disallowance.

In other words, the Secretary's interpretation of the regulation has been anything but

23

consistent. These contradictory views of the "disallowed" parallel of the regulation cast additional doubt on the Secretary's interpretation of the regulatory language, and the majority's attempt to synthesize the history and meaning of the "disallowed" parallel on the Secretary's behalf falls short.

It is also troubling that the "disallowed" parallel is, at the very least, an anachronism based on an arcane view of the law, which the Secretary uses to support his denial of benefits. This Court has held for over 20 years that a claim for a higher disability rating is a new claim for an increased rating and not a claim to reopen. *See Proscelle v. Derwinski*, 2 Vet.App. 629, 631 (1992) ("[The] claim for an increased rating presently on appeal is not a reopened claim subject to the requirement that there be 'new and material' evidence to justify reopening under 38 U.S.C. § 5108, because the veteran claims that his service-connected disability has undergone an increase in severity since that prior claim. The current claim is thus a new claim." (citations omitted)); *Sears v. Principi*, 16 Vet.App. 244, 251-52 n.2 (2002) (Steinberg, J. concurring) (collecting cases).

Moreover, we conclude that the Secretary's interpretation, offered for the first time in his motion for en banc review, does not represent his established or considered view on the matter. *See Reizenstein v. Shinseki*, 583 F.3d 1331, 1335 (Fed. Cir. 2009). Notably, the Secretary quotes a November 2013 *Federal Register* Notice of Proposed Rulemaking where he claims that he has never once applied § 3.157(b) to a case to allow reopening of a claim where service connection was previously denied. Mot. for En Banc at 10. The 2013 *Federal Register* also includes a statement by VA that there was no reason after 1962 to allow a medical record to serve as a claim for an increase such that a claimant could seek increased benefits for a condition that had not been previously service connected. 78 Fed. Reg. 71,042, 71,069 (Nov. 27, 2013). Yet, in 1987, when the Secretary proposed adding the last sentence in § 3.157(b)(1), his *Federal Register* comments stated that the sentence was added to clarify that an examination could serve as an informal claim either when service connection had already been established "or" when a formal claim is filed within one year. Medical Reports as Informal Claims/Recoupment of Separation Pay, 52 Fed. Reg. 3,286, 3,286 (Feb. 3, 1987).

Additionally, the Administrator of the Veterans Administration[12] issued Transmittal Sheet

---

[12] The Department of Veterans Affairs was established on March 15, 1989, to succeed the Veterans Administration, which was headed by an Administrator.

744 to "inform all concerned why these changes to [§ 3.157(b)(1)] are being made." He stated:

> Informal claims must reasonably identify the benefit sought, and reports of examination or treatment of a disability *for which service-connection has not yet been established* do not justify an assumption that service-connection is being claimed. On the other hand, if service-connection has already been established for a disability, a report of examination or treatment for that disability does justify an assumption by the VA that the veteran seeks increased compensation for that disability.

*Id.* (emphasis added). The transmittal sheet issued by the Administrator clearly indicates that the regulation was amended in 1987 to include the requirement that a veteran identify the benefit sought because a medical report could not constitute a claim for service connection for a new condition *unless* the veteran identified the benefit sought. By contrast, such a requirement was unnecessary when the veteran was seeking increased compensation for a disability for which he was already service connected.

The majority relies on a 1961 amendment to § 3.157(b)(1) to conclude that VA's "desire [was] to allow earlier effective dates for those whose previously service-connected condition[s] worsened, but not those who had yet to establish service connection."[13] *Ante* at 7. However, in doing so, the majority does not consider properly the significance of the 1987 amendment—the Secretary's most recent finally adopted substantive amendment to the regulation. Unfortunately, the majority's discussion of the 1987 amendment is inaccurate and creates an erroneous impression that in 2013 VA explained the purpose of the 1987 amendment. According to the majority, in 2013 VA stated that § 3.157(b) was amended in 1987 to clarify that the agency's pre-1962 view–that a medical record could constitute an informal claim for service connection for a disability–was extinct.[14] *Ante* at 9 n.5.

In fact, VA's 2013 comments to the proposed amendment to § 3.157(b) do not include *any*

---

[13] It is noteworthy that the Secretary's en banc motion fails to discuss the history of the regulation and its evolution. This failure by the Secretary puts the Court at a disadvantage.

[14] We observe the Secretary's statement in the *Federal Register* that the last sentence of § 3.157(b)(1), the sentence at issue in this case, addressed a statutory provision repealed in 1962. VA Compensation and Pension Regulation Rewrite Project, 78 Fed. Reg. 71,042, 71069 (Nov. 27, 2013). Yet, he added the last sentence of § 3.157(b)(1) in 1987. It is incomprehensible to us that the Secretary would add the last sentence of § 3.157(b)(1) to the regulation in 1987 to address a statute that was repealed in 1962.

discussion regarding the 1987 amendment. The only statement made by VA regarding the purpose of the 1987 amendment is the contemporaneous statement made by the Administrator in the transmittal sheet. His comments demonstrate that VA did not consider its pre-1962 view to be extinct. Indeed, the Administrator's comments show that the 1987 amendment was intended to make clear that the regulation was to apply to claims for service connection for new conditions and not merely to claims for increases for disabilities already service connected.[15] Thus, the 1987 amendment shows that the Secretary's interpretation in his en banc motion reads out of existence not only the very language he specifically sought to add in 1987, but completely disregards VA's expressed intent in explaining the reason for the amendment. In sum, the 1987 amendment and the Administrator's transmittal sheet show that the Secretary's current interpretation is not entitled to deference because it is blatantly inconsistent with his past interpretations and does not represent an established, fair, or considered view of the regulation.

We are also disturbed that the Secretary's proffered position in his motion for en banc review contradicts the position he took earlier in this *same* case. In 2010, Mr. Pacheco appealed an earlier Board decision on this same issue to this Court. At that time, the Secretary urged the Court to remand the case for the Board to address § 3.157(b). In urging remand, the Secretary stated:

> The May 2001 VA treatment note is dated within one year of [a]ppellant's January 23, 2002, *claim to reopen* [his claim for service connection]. However, in the decision on appeal, the Board did not discuss or consider whether 38 C.F.R. § 3.157(b) should be applied in assigning an effective date for the grant of service connection.

Secretary's Br. at 11, in No. 10-1991 (emphasis added); *see Pacheco v. Shinseki*, No. 10-1991, 2011 WL 2516195, at *2-*3 (U.S. Vet. App. June 24, 2011). Contrary to his current contention that Mr. Pacheco's May 2001 treatment report may not be the basis of an earlier effective date under § 3.157(b)(1) because his leg and hip conditions were not service connected in 2001, the Secretary in 2010 clearly viewed that report as an attempt to reopen his claim for service connection and urged

---

[15] The majority also states that it does not read the transmittal sheet "as conveying the Administrator's intention to contravene the plain language of the regulation, which expressly limits the applicability of § 3.157(b) to claims for increase or claims to reopen." *Ante* at 9, n.5. This is puzzling because the majority explained earlier that the language of the regulation was ambiguous and that this was the reason it was deferring to the Secretary's interpretation expressed in his motion. *Ante* at 6.

this Court at that time to remand for consideration of § 3.157(b).

The majority states that no significance should be attached to the Secretary's previous motion for a remand because he was merely ensuring that the Secretary discussed all potentially applicable regulations. *Ante* at 8-9. Yet, according to the majority's opinion and the interpretation posited in the en banc motion, there was no reason whatsoever to conclude that this regulation was potentially relevant because the veteran had not been denied service connection because his claimed disabilities were noncompensable. If the Secretary's current interpretation is correct, then any error in failing to discuss § 3.157(b) would have been harmless, and there would have been no valid reason to persuade this Court that a Board decision should be vacated and remanded. *See* 38 U.S.C. § 7261(b)(2)*; see also Soyini v. Derwinski*, 1 Vet.App. 549, 546 (1991) (holding that remand is not warranted when it "would result in this Court's unnecessarily imposing additional burdens on the [Board] with no benefit flowing to the veteran."). Accordingly, these circumstances counsel against concluding that the Secretary's current view represents his established view on this matter.

We must also dissent from the majority opinion because it fails to resolve interpretive doubt in favor of the veteran, as we are bound to do under *Gardner*, 513 U.S. at 118. We are mindful that veterans "cannot rely upon the generous spirit that suffuses the law generally to override the clear meaning of a particular provision." *Boyer v. West*, 210 F.3d 1351, 1355 (Fed. Cir. 2000). However, neither can the Secretary espouse a heretofore unwritten and unsupported regulatory interpretation to resolve ambiguity in a regulation in a manner unfavorable to the veteran. *Gardner*, 513 U.S. at 118; *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 692 (Fed. Cir. 2000) (traditional *Chevron* analysis is modified by the doctrine that interpretive doubt is to be resolved in the veteran's favor); *see also Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009) ("The VA disability compensation system is not meant to be a trap for the unwary, or a stratagem to deny compensation to a veteran who has a valid claim . . . .").

In sum, we believe that deference to the Secretary is not appropriate here because his interpretation of § 3.157(b) is inconsistent with and overlooks portions of the regulation's language and structure, does not represent his considered view on the matter, and does not resolve the provision's ambiguity in the veteran's favor. For the reasons set forth in the January 16, 2014, panel opinion, we would reverse the Board decision and order the Board, pursuant to § 3.157(b), to grant

an effective date of May 11, 2001, for the award of service connection for a right leg and hip disability. Although we agree that § 3.157(b) is ambiguous, we respectfully dissent from the remainder of Part II.A of the per curiam opinion.

GREENBERG, *Judge*, concurring in part and dissenting in part: I concur as to the Court's remand of this case, dissent as to its affirmance of any part of the Board decision, and ultimately would go much further than my colleagues in resolving this case. Our Court must not continue to show deference to the Secretary's interpretations of statutes and regulations where, as here, doing so contravenes the long-applied veterans "canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *King v. St. Vincent's Hospital*, 502 U.S. 215, 220-21, n. 9 (1991); *see also Henderson v. Shinseki*, 131 S. Ct. 1197, 1206 (2011); *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980) (Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021 *et seq.*, "is to be liberally construed for the benefit of the returning veteran"); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) (Selective Training and Service Act of 1940, 54 Stat. 885, 50 U.S.C. Appendix § 301 *et seq.*, "is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need"). The appellant is a 94-year-old veteran of combat in the Southwest Pacific in World War II who was injured in a foxhole during an enemy air raid and has suffered from right knee and hip disabilities ever since. R. at 960. Instead of deferring to the Secretary on any matter here, the Court should exercise its statutory and inherent–that is, constitutional–powers of equity, to ensure justice for this veteran.

In the matter of deference, I would not reward the Secretary for writing an ambiguous, and unintelligible, regulation. Thus, I would give no deference to his interpretation of 38 C.F.R. § 3.157(b). As stated by Chief Justice Roberts, "[t]he rise of the modern administrative state has not changed" the "'duty of the judicial department to say what the law is,'" *City of Arlington v. FCC*, 133 S. Ct. 1863, 1880 (2013) (Roberts, C.J., dissenting) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)), and as noted by Justice Scalia, "*Auer* [*v. Robbins*, 519 U.S. 452, 462 (1997)] deference is . . . a dangerous permission slip for the arrogation of power" by administrative agencies. *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1339, 1341 (2013) (Scalia, J., dissenting)

28

(declaring, with regard to judicial deference to agency interpretations of regulations, that "[e]nough is enough"). More broadly, I conclude that, regardless of regulations that limit the original statutory command concerning effective dates and impose a rule of finality, the Court should prevent an unjust outcome here, by returning the veteran's claim for assignment of an effective date of February 28, 1974, the day he first filed for benefits. R. at 1386; *see* 38 U.S.C. § 5110(a) ("[T]he effective date of an award . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.").

The Court must be guided foremost by the veterans canon when it applies the law. The statutes and regulations relevant in this case should be interpreted and applied in light of that canon, particularly as "[i]t is presumable that Congress legislates with knowledge of our basic rules of statutory construction." *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496 (1991); *see also United States v. Oregon*, 366 U.S. 643, 647 (1961) ("The solicitude of Congress for veterans is of long standing."); *Shinseki v. Sanders*, 556 U.S. 396, 416 (2009) (Souter, J., dissenting) (congressional solicitude for veterans is plainly reflected in the Veterans' Judicial Review Act of 1988, 38 U.S.C. § 7251 *et seq*. (VJRA), as well as in subsequent laws that "place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions.").

Informed by clear congressional intent, and the judicial tradition of executing that intent when reviewing veterans benefits,[16] the Court should apply well-settled principles of equity to provide an adequate remedy. The veteran's February 1974 claim was denied for a lack of medical

---

[16] *See , e.g., Hayburn's Case*, 2 U.S. 408, 2 Dall. 409, 1 L. Ed. 436 (1792) (describing the attempts of circuit courts to circumvent the unconstitutionality of the Invalid Pensioners Act of 1792); *Marbury,* 5 U.S. (1 Cranch) at 164 (posing the question, "the secretary at war is ordered to place on the pension list [for compensation], all persons whose names are contained in a report previously made by him to congress. If he should refuse to do so, would the wounded veteran be without remedy?"); *U.S. ex. rel. Miller v. Raum*, 135 U.S. 200, 204 (1890) (finding that, although "the courts will not interfere with the executive officers of the government in the exercise of their ordinary official duties," the Supreme Court could compel the payment of a veteran's disability pension by mandamus); *Boone v. Lightner*, 319 U.S. 561, 575 (1943) (noting that Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. § 501 *et seq.*, was "always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation"); *Feres v. UnitedJ States*, 340 U.S. 135 (1950) (considering, but ultimately denying, applicability of the Federal Tort Claims Act, 28 U.S.C. § 1346(b), to service-related injuries); *Johnson v. Robison*, 415 U.S. 361 (1974) (holding that judicial review of constitutional challenges to veterans benefits legislation was available even though Congress had foreclosed judicial review of individual benefits determinations); *Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993) (holding that the Soldiers' and Sailors' Civil Relief Act of 1940 was "unambiguous, unequivocal, and unlimited," without contextual conditions for its protections); *Henderson,* 131 S. Ct. at 1206 (finding that the 120-day deadline for seeking Court review was not jurisdictional and did not "carry the harsh consequences" of a jurisdictional rule).

29

nexus, but the *facts* at the time of that filing, verified by VA's satisfactory medical report in 2001, were ultimately sufficient to substantiate a claim for benefits. R. at 505, 808. I would thus enjoin the Secretary from refusing to assign the veteran an effective date of the original claim, that is, an effective date of February 28, 1974. *See* 38 U.S.C. § 5110(a).

Acknowledging our repeated insistence in our caselaw that "this Court is not a court of equity and cannot provide equitable relief," *Moffitt v. Brown*, 10 Vet.App. 214, 225 (1997), I would reject as unpersuasive and unfounded this fundamentally incorrect application of our judicial power. *See Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power . . . ."); *see also Rosenberg v. Mansfield*, 22 Vet.App. 1, 6 (2007) (Kasold, J., concurring) ("Indeed, as with any federal court, [the Court has] all the authority necessary to exercise equitable jurisdiction and direct equitable relief not otherwise restricted by law."). Nothing in the VJRA or its amendments contained in the Veterans Programs Enhancement Act, Pub. L. No. 105-368, 112 Stat. 3315, § 501 *et seq.*, indicates that Congress intended to preclude this Court from granting equitable relief in its review of veterans benefits matters. Rather, the continued application of equitable doctrines at this Court without congressional intervention suggests the opposite: that we may, and here must, apply, in the interest of justice, equity. *See, e.g., Cox v. West*, 149 F.3d 1360, 1363-64 (Fed. Cir. 1998) (the Court has the authority to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651); *Padgett v. Nicholson*, 473 F.3d 1364, 1368 (Fed. Cir. 2007) (holding that, in light of the purpose of the Court's role in veterans benefits, "[i]t would be incongruous if the authority to provide *nunc pro tunc* relief were not available to the [Court]"); *see also Bove v. Shinseki*, 25 Vet.App. 136, 143 (2011) (per curiam order) (Court may "independently weigh the facts to determine if equitable tolling is appropriate" for the 120-day time limit for appeals).

We must provide equitable remedies to deserving veterans and harmonize our jurisprudence with the veterans canon, applying the full extent of our powers when appropriate. It is right that after 70 years of pain and suffering, and 40 years of pursuit of an adequate administrative remedy, the time has come for equity to aid the diligent. Let right be done, at last. Although I concur to ensure a remand of the appellant's claim, more broadly I dissent.