# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-0389

ANTONIO PACHECO, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided January 16, 2014)

*Paul M. Schoenhard*, of Washington, D.C., was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Kenneth A. Walsh*, Deputy Assistant General Counsel; and *Deborah A. Hoet*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, BARTLEY, and GREENBERG, *Judges*.

GREENBERG, *Judge*: Antonio Pacheco appeals through counsel[1] the September 22, 2011, Board of Veterans' Appeals (Board) decision that denied an effective date prior to January 23, 2002, for disability compensation and related VA benefits based on a right leg and hip injury he sustained as a soldier during World War II. Record (R.) at 3-10.[2] Mr. Pacheco asserts that 38 C.F.R. § 3.157(b) (2013) entitles him to an effective date of May 2001, the date of a VA hospital examination addressing his disabilities. He also argues that the Board should have awarded an effective date of 1974 based on newly discovered service records, pursuant to 38 C.F.R. § 3.156(c) (2013). *See* Appellant's Brief (Br.) at 1-5. On January 13, 2014, the Court erroneously issued an

---

[1] Mr. Pacheco initially represented himself in this matter and filed his own brief, but secured pro bono counsel for oral argument. The Court will consider Mr. Pacheco's general arguments, as well as the specific arguments raised at oral argument. *See Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000).

[2] Like the Board, the Court will "focus its discussion on the right leg / hip disorder" because the issues of "pelvic asymmetry, [dependents' educational assistance] benefits, and [special monthly compensation] are secondary" or ancillary to the right leg and hip condition. R. at 8.

opinion in this appeal. That opinion will be withdrawn, and this one issued in its stead. For the following reasons, the Court will reverse the Board determination that Mr. Pacheco is not entitled to an effective date prior to January 23, 2002, and remand this matter for further adjudication consistent with this opinion.

Mr. Pacheco served honorably on active duty in the U.S. Army from January 1942 to November 1945 in the Pacific Theater. R. at 1316 (DD Form 214, Certificate of Release or Discharge from Active Duty). During combat service in 1942, he took cover in a fox hole while his base was taking fire and injured his right hip and knee when fellow soldiers jumped into the hole and landed on him. R. at 780-82. According to the veteran, his military occupation specialty was subsequently changed from machine gunner to cook as a result of medical issues. R. at 614.

In an application VA received on February 28, 1974, Mr. Pacheco sought VA benefits based on service connection for his injuries. R. at 1386-87. Unfortunately, VA could not corroborate Mr. Pacheco's account of his injury because his service medical records appeared to have been destroyed in the infamous 1973 fire at the National Personnel Records Center (NPRC). *See* R. at 913. That July, VA denied benefits based on service connection because it could not confirm that he had been injured during service. R. at 1370-71. However, VA awarded him non-service-connected pension benefits. *Id.*

In October 1977, Mr. Pacheco again filed for benefits based on his right leg disability. R. at 1318. This time, he provided more detailed information about his military service and submitted private medical records. R. at 1302-04, 1308. In February 1978, VA located service department records–morning reports–from Mr. Pacheco's military units, which indicated that he had been hospitalized and "taken sick" several times during 1943. R. at 1289-1301. However, in a March 1978 rating decision, VA once again denied service-connection benefits because the morning reports did not specify any diagnosis for Mr. Pacheco's hospitalization or sickness. R. at 1285-87. VA also denied entitlement to non-service-connected pension because at that time his income was too high. R. at 1287.

Mr. Pacheco attempted to reopen his claim based on his leg and hip injuries again in April 1982, October 1988, February 1989, and September 1995. R. at 1280-83, 1219-24, 1177. VA rejected the claims each time, but attempted to locate service department records. In December 1998, the NPRC sent Mr. Pacheco a letter explaining that it had again attempted to locate his service

2

department records, but that it "was unable to locate any alternate record sources containing remarks pertaining to diagnosis or treatment." R. at 913. In July 2000, the Board determined that Mr. Pacheco had not submitted new and material evidence, and denied his request to reopen his claim. R. at 816-31.

But although Mr. Pacheco could not persuade VA that he had been injured in combat, he nevertheless sought VA medical treatment for his disabilities. On May 11, 2001, a VA physician assistant examined the veteran and noted that he had "severe DJD [degenerative joint disease]" that was "probabl[y] post traumatic." R. at 614. Based on that statement, on January 23, 2002, Mr. Pacheco submitted to VA a letter which VA construed as a request to reopen his previously denied claim. R. at 803-15. Although the adjudication of his 2002 claim went through several stages, VA eventually granted him service connection for "residuals from injury, total right hip replacement (claimed as right hip (leg) disorder)," and "pelvic asymmetry producing a mechanical short left leg," at ratings of 90% and 10%, respectively, and dependents' educational assistance (DEA) and special monthly compensation (SMC). R. at 525-37. In August 2005, VA set the effective date to January 23, 2002, the date it received Mr. Pacheco's letter seeking to reopen his claim. R. at 504-10.

Mr. Pacheco sought an earlier effective date in an appeal to the Board, but the Board denied his claim. R. at 82-92. In October 2008, VA received additional service department records. R. at 196-200. In June 2011, the Court remanded the issue of an earlier effective date to the Board to "address whether the May 2001 treatment record constituted an informal claim to reopen within one year of receipt of the appellant's 2002 formal claim to reopen under 38 C.F.R. § 3.157(b)." *Pacheco v. Shinseki*, No. 10-1991, 2011 WL 2516195, at * 3 (Vet. App. June 24, 2011). The Board again denied the appellant's claim in the September 2011 decision currently on appeal before the Court. In that decision, the Board stated that "[t]he [appellant] [did] not meet the threshold criteria" for 38 C.F.R. § 3.157(b), because he was not service connected at the time the medical records were created in May 2001 and a "formal claim for pension or compensation had not been allowed (or denied because the disability was compensable)." R. at 9-10.

Mr. Pacheco argues that he is entitled to an earlier effective date under 38 C.F.R. § 3.157(b)(1) and 38 C.F.R. § 3.156(c). The Secretary argues that the Board's denial of an earlier effective date is not clearly erroneous and is supported by an adequate statement of reasons or bases because Mr. Pacheco does not meet the "threshold criteria" for an earlier effective date under

3

§ 3.157(b) and because VA considered the newly associated service department records in its prior final denials of reopening. Secretary's Br. at 14. The Court will address those arguments in turn.

## I.

Since the founding of the Republic, Congress has provided for disabled veterans. Indeed, less than two months after the Declaration of Independence was signed, the newly established Continental Congress established a system of disability benefits for "disabled soldiers and seamen," which the present Congress established by the Constitution continued unabated. *See* 5 JOURNALS OF THE CONTINENTAL CONGRESS 1774-1789, at 702-05 (1906) (stating that "in the course of the present war, some [soldiers and seamen] may lose a limb, or be otherwise so disabled as to prevent their serving in the army or navy, or getting their livelihood, and may stand in need of relief," and granting the disabled veteran "the one half of his monthly pay from after the time that his pay as an officer or soldier ceases"); *see* 1 Stat. 243, 243-45 (1792) ("[a]n Act to provide for the settlement of the Claims of Widows and Orphans barred by the limitations hereinfore established, and to regulate the Claims of Invalid Pensions," referring to prior Acts of 1785 and 1787). That same concern for veterans justice extends to the courts, which "have long recognized the significance of addressing issues of veterans benefits and have consistently drawn on their judicial powers to provide effective remedies where appropriate." *Romanowsky v. Shinseki*, 26 Vet.App. 289, 295 (2013). This Court follows these noble traditions through the Veterans Judicial Review Act of 1988, 38 U.S.C. §§ 7251-7292, and provides review of Board decisions in that same spirit.

Mr. Pacheco argues that under § 3.157(b)(1), he is entitled to an effective date of May 11, 2001, the date of his VA medical examination report, rather than January 23, 2002, the date he filed the claim to reopen this matter, because he had previously been allowed a VA pension and filed his claim within one year of the medical examination report. The Court agrees.

Under certain limited circumstances, a VA medical examination can serve as an informal claim. *See* 38 C.F.R. § 3.157. For example, once a formal claim for pension has been allowed, certain hospital admissions or examinations will be accepted as informal claims for increased benefits or to reopen. 38 C.F.R. § 3.157(b) ("Once a formal claim for pension or compensation has been allowed . . . , receipt of one of the following will be accepted as an informal claim for increased

4

benefits or an informal claim to reopen."). Under 38 C.F.R. § 3.157(b)(1), "[t]he date of outpatient or hospital examination or date of admission to a VA or uniformed services hospital will be accepted as the date of receipt of that claim." The provisions of § 3.157(b)(1) "apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established or when a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission."

Because Mr. Pacheco's claim for pension benefits was "allowed" prior to his May 2001 VA examination (R. at 1370-71), he meets the threshold requirement of § 3.157(b). *See* 38 C.F.R. § 3.157(b) (requiring that "a formal claim for pension or compensation has been allowed"). And because VA received his January 2002 letter specifying the benefit sought within one year from the date of that examination (R. at 803-15), he meets the requirements of § 3.157(b)(1). *See* 38 C.F.R. § 3.157(b)(1) (requiring that "a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission"). Therefore, the May 2001 VA examination report constituted the requisite informal claim and he is entitled to an earlier effective date commensurate with the date of that examination. *See* 38 C.F.R. § 3.157(b) ("Once a formal claim for pension . . . has been allowed . . . , receipt of one of the following will be accepted as an informal claim for increased benefits or an informal claim to reopen[:] . . . (1) Report of examination or hospitalization by [VA]."). Accordingly, the Court concludes that the Board's finding that Mr. Pacheco never had an allowed pension claim and its finding that the May 2001 VA examination report did not satisfy the criteria of § 3.157(b)(1) is clearly erroneous. R. at 9-10.

We note that in Mr. Pacheco's case, although the 2001 VA examination report relates to the same condition noted in his 1974 claim for pension–his right hip and leg problems–the parts of the regulation at issue here do not explicitly require that an original pension claim relate to the same condition as the recent VA examination report. *See* 38 C.F.R. § 3.157(b), (b)(1) (a report of VA examination or hospitalization "will be accepted as . . . an informal claim to reopen" when "a formal claim for pension or compensation has been allowed" and "when a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission"). In fact, unlike a claim for service connection, in which a veteran must identify a disability that is allegedly due to service, a claim for pension does not necessarily require a veteran to identify a disability. Pension is based not only on income and net worth but on whether all of a

5

veteran's disabilities result in permanent and total disability. *See* 38 U.S.C. § 1521(a). This means that many veterans applying for pension need not identify a specific disability when they apply for pension. *See* 38 C.F.R. § 3.3(a)(3)(vi) (2013). For example, a veteran age 65 or older does not need to identify a specific disability when applying for pension because 38 U.S.C. § 1513(a) "eliminates the permanent and total disability requirement in [section] 1521(a)" for such a veteran. *Chandler v. Shinseki*, 676 F.3d 1045, 1050 (Fed. Cir. 2012); *see also* VA Form 21-526 ("Veterans Application for Compensation and/or Pension," which directs that applicants for non-service-connected pension need not list any specific disability if they are age 65 or older). In addition, a veteran who is "[a] patient in a nursing home for long-term care because of disability," "[d]isabled[] as determined by the Commissioner of Social Security for purposes of any benefits administered by the Commissioner," or "[u]nemployable as a result of disability reasonably certain to continue throughout the life of the person" will receive improved pension benefits so long as the veteran meets income and net worth requirements, 38 C.F.R. § 3.3(a)(3)(vi)(B)(1)-(3), and hence such veterans need not necessarily identify a specific disability when applying for pension. Accordingly, we hold that as long as a pension claim previously has been allowed as required in § 3.157(b), a VA examination report will constitute the requisite informal claim for increase or reopening for service connection disability compensation benefits under § 3.157(b)(1), irrespective of whether any disability identified in the original pension claim relates to the same condition as the more recent examination report.

The Court distinguishes this matter from other precedent. In *MacPhee v. Nicholson*, 459 F.3d 1323 (Fed. Cir. 2006), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) addressed the separate issue of whether a VA examination report may constitute an informal claim for increased compensation for a service-connected condition. The Federal Circuit specifically highlighted the first clause of the first sentence in § 3.157(b)–"[o]nce a formal claim for pension or compensation has been allowed"–and the *first* clause of the last sentence in § 3.157(b)(1)–"[t]he provisions of this paragraph apply only when such reports relate to examination or treatment of a disability *for which service-connection has previously been established*"–and held that § 3.157(b) "makes clear that a medical examination report will only be considered an informal claim for an *increase in disability benefits* if service connection has already been established for the disability." 459 F.3d at 1327 (emphasis added). Unlike the veteran in *MacPhee*, Mr. Pacheco was not

previously granted service connection; instead he was granted pension benefits, which, as described earlier, does not at all times require that a specific disability be named. Thus, the first part of the last sentence in § 3.157(b)(1), which requires that the report relate to a disability for which service connection has previously been established, is not applicable here.

The Federal Circuit in *MacPhee* did not examine or address the portion of § 3.157(b)(1) upon which we base our decision today–i.e., the second clause of § 3.157(b)(1) requiring that VA receive "a claim specifying the benefit sought" within one year from the date of the VA examination–because the facts of that case did not raise its application. In *MacPhee*, VA received the veteran's formal claim for secondary service connection nine years after he was hospitalized at a VA facility, well after the expiration of § 3.157(b)(1)'s one-year deadline for receipt of "a claim specifying the benefit sought." *See* 459 F.3d at 1325.

Because *MacPhee* involved a previous grant of service connection instead of a grant of pension benefits, and because an applicant for pension need not always identify a specific disability or disabilities, the Federal Circuit's holding in *MacPhee* is not applicable here. In addition, the Federal Circuit in *MacPhee* had no occasion to consider anything other than the first clause of the last sentence of § 3.157(b)(1), and therefore its analysis in that case is not binding on our interpretation of the second clause of that sentence. Based on the foregoing, Mr. Pacheco is entitled to an effective date of May 11, 2001, and the Board's decision must be reversed. *See Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004) (stating that "reversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision").

## II.

When VA determines that a veteran is entitled to benefits, the general rule is that the award becomes effective on either the date VA received the veteran's claim (or his claim to reopen), or the date he or she became eligible for the benefit, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400 (2013). However, 38 C.F.R. § 3.156(c) provides an exception to this general rule: when VA decides a claim, but later receives "relevant official service department records" that existed but had not been associated with the file at the time the claim was decided, "VA will reconsider the claim."

38 C.F.R. § 3.156(c)(1).[3]  If VA awards benefits "based all or in part" on those late-arriving official service department records, then the award "is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later."  38 C.F.R. § 3.156(c)(3)[4]; *see Mayhue v. Shinseki*, 24 Vet.App. 273, 279 (2011) ("[A] claimant whose claim is reconsidered based on newly discovered service department records may be entitled to an effective date as early as the date of the original claim.").

Mr. Pacheco argues that under § 3.156(c), he is entitled to an effective date of February 28, 1974, the date VA received his original claim for benefits for his right leg disability.  After all, in July 1974, when VA denied his claim, it did not yet have access to the Army records it obtained in 1978 or 2008 showing that he had been hospitalized and sick during 1943 (R. at 1288-1301, 196-200), or the 1998 NPRC letter summarizing those records (R. at 913).  Mr. Pacheco argues that because those records later contributed to his successful claim for service connection based on his right leg disability, § 3.156(c) mandates an effective date going back to his original claim on that issue.  The Court notes that the service department records obtained in 2008 are not completely decipherable.  *See* R. at 196-200.  In any event, the Board did not determine whether the assignment of an earlier effective date based on those records, which were associated with the claims file after the December 2004 grant of service connection for residuals of a right leg and hip injury, would constitute "[a]n award based all or in part" on those records as required by § 3.156(c)(3).  Despite receipt of potentially new service department records during the pendency of Mr. Pacheco's appeal of the assigned effective date of benefits, the Board did not address § 3.156(c) or whether the service department records received in 2008 were new and material.  Because a decision on that issue would

---

[3] The regulation states:
(1) Notwithstanding any other section in this part, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim notwithstanding paragraph (a) of this section.

38 C.F.R. § 3.156(c)(1).  Paragraph (a) of § 3.156 defines new and material evidence.  Generally, a veteran must submit new and material evidence to reopen a finally adjudicated claim.  *See* 38 C.F.R. § 3.156(a).

[4] The regulation states:
(3) An award made based all or in part on the records identified by paragraph (c)(1) of this section is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later, or such other date as may be authorized by the provisions of this part applicable to the previously decided claim.

38 C.F.R. § 3.156(c)(3).

require factfinding generally outside our jurisdiction, *see* 38 U.S.C. § 7261; *Servello v. Derwinski*, 3 Vet.App. 196, 200-01 (1992) ("The role of an appellate court is not to serve as a de novo factfinder."), the Court will remand this matter to allow the Board to decide it in the first instance. *See Maggitt*, 202 F.3d at 1377 (Court has discretion to remand for initial adjudication an issue raised for the first time on appeal).

Finally, Mr. Pacheco argues that a prior, unidentified Board decision contains clear and unmistakable error (CUE) because, at the time of that decision, certain medical reports were not included in the record and the evidence shows that he was entitled to additional compensation based on his hip replacement surgery. *See* Appellant's Br. at 1-5. As these issues were not raised to or addressed by the Board, the Court lacks jurisdiction to consider them. *See* 38 U.S.C. § 7111(e) (stating that a request for revision of a Board decision based on CUE shall be submitted directly to the Board); *Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002) ("[E]ach 'specific' assertion of CUE . . . must be the subject of a decision by the [Board] before the Veterans Court can exercise jurisdiction over it."); *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc) (noting that the "necessary jurisdictional 'hook'" for the Court is "a decision of the [Board] on the specific issue of [CUE]"). The Court notes, however, that on remand the Board must address any assertions of CUE properly raised by Mr. Pacheco. *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (Board required to address all issues raised either by the claimant or by evidence of record); 38 C.F.R. §§ 20.1400(a), 20.1404(c) (2013); *but see Winsett v. Principi*, 341 F.3d 1329, 1331 (Fed. Cir.2003) (holding that CUE may not be brought after an underlying issue has been adjudicated by a court and noting that permitting such action "would allow a lower tribunal to review the decision of a higher tribunal"); R. at 34-40 (June 2011 Court decision affirming April 2010 Board decision that, inter alia, dismissed without prejudice Mr. Pacheco's nonspecific motion for revision of an unidentified VA decision based on CUE).

As "many unfortunate and meritorious [veterans], whom [C]ongress have justly thought proper objects of immediate relief, may suffer great distress, even by a short delay, and may be utterly ruined, by a long one," *Hayburn's Case*, 2 U.S. (2 Dall.) 408, 410, n. (1792), the Secretary is directed to act expeditiously on remand, particularly in light of Mr. Pacheco's advanced age. *See* 38 U.S.C. § 7112. The January 13, 2014, panel opinion is WITHDRAWN, and this opinion is issued in its stead. After consideration of the briefs, a review of the record, and the argument made in open

9

court, the Board's September 22, 2011, determination that the appellant was not entitled to an effective date earlier than January 23, 2002, is REVERSED, and the matter is REMANDED for entry of an effective date for an award of benefits based on service connection for right leg disability of May 11, 2001, and for consideration in the first instance whether Mr. Pacheco is entitled to an earlier effective date pursuant to 38 C.F.R. § 3.156(c).