PER CURIAM:
World War II veteran Antonio Pacheco appeals through counsel[1] the September 22, 2011, Board of Veterans’ Appeals (Board) decision that denied an effective date prior to January 23, 2002, for (1) a right leg and hip disability, (2) pelvic asymmetry, (3) dependents’ educational assistance (DEA) benefits, and (4) special monthly compensation (SMC). Mr. Pacheco argues that an earlier effective date is warranted pursuant to 38 C.F.R. § 3.157(b) (allowing for an earlier effective *23 date based on the submission of certain medical reports) and 38 C.F.R. § 3.156(c) (allowing for an earlier effective date based on newly discovered service department records). In a panel opinion issued January 16, 2014, the Court reversed the Board’s effective date decision and held that, as long as a pension claim previously has been allowed as required in § 3.157(b), a VA examination report will constitute the requisite informal claim for increase or reopening under § 3.157(b)(1). Pacheco v. Shinseki 26 Vet.App. 413, 417 (2014). The Secretary filed a motion seeking en banc review on the interpretation of § 3.157(b) because it involved an issue of exceptional importance. He argues that the plain meaning of § 3.157(b) compels a result different from that rendered by the panel, and he alternatively argues that, to the extent that the regulation is ambiguous, the Court should defer to his interpretation thereof. Mr. Pacheco filed a response on April 3, 2014. The Secretary’s motion for en banc review was granted on May 15, 2014.
For the reasons discussed below, we hold that § 3.157(b) is ambiguous and deference to the Secretary’s interpretation of this regulation is warranted. We also, however, exercise our discretion to remand the matter for the Board to address in the first instance a possible earlier effective date for Mr. Pacheco’s benefits under § 3.156(c). See Maggitt v. West, 202 F.3d 1370, 1377 (Fed.Cir.2000) (Court has discretion to remand for initial adjudication an issue raised for the first time on appeal). Accordingly, the Court’s January 16, 2014, opinion is withdrawn, and the September 22, 2011, Board decision on appeal will be set aside and the matter remanded for further adjudication.
I. BACKGROUND
Mr. Pacheco served honorably on active duty in the U.S. Army from January 1942 to November 1945. He reports that, during combat service in 1942 in the Pacific Theater, he took cover in a fox hole while his base was taking fire and injured his right leg and hip when fellow soldiers jumped in and landed on him. On February 28, 1974, Mr. Pacheco sought VA benefits for his injuries. In a July 1974 rating decision, he was awarded non-service-connected pension benefits, but denied disability compensation benefits because entitlement was “not shown by [the] evidence of record.” Record (R.) at 1370. Mr. Pacheco also was informed that his service medical records appeared to have been destroyed in the July 1973 fire at the National Personnel Records Center (NPRC).
In October 1977, Mr. Pacheco again filed for compensation benefits based on his right leg and hip disability. In February 1978, the Secretary located service department records — morning reports — from Mr. Pacheco’s military units that indicated he had been hospitalized and “taken sick” several times during 1943, R. at 1295. In March 1978, however, his disability compensation claim was denied again on the merits because the morning reports did not specify any diagnosis for his hospitalization or sickness. The Secretary also determined that Mr. Pacheco was no longer eligible for non-service-connected pension because his income was too high.
Mr. Pacheco attempted to reopen his disability compensation claim based on his leg and hip injuries again in April 1982, October 1988, February 1989, and September 1995, but these attempts were denied. Moreover, in December 1998, the NPRC informed Mr. Pacheco that it had again attempted to locate his service department records, but that it “was unable to locate any alternat[iv]e record sources containing remarks pertaining to diagnosis or treatment.” R. at 913. Mr. Pacheco sought *24 VA medical treatment for his disabilities, and on May 11, 2001, a VA physician assistant examined him and noted that he had “sever[e] DJD [(degenerative joint disease)]” that was “probabl[y] post[-]traumatic.” R. at 614. In January 2002, Mr. Pacheco submitted another request to reopen his previously denied claim.
Based on that request and the May 2001 VA medical examination record,.the Board reopened Mr. Pacheco’s claim for disability compensation and remanded the matter to obtain a medical opinion on the relationship between his current disabilities and service. In November 2004, a VA medical examiner opined that the current disabilities were related to service, and, the following month, Mr. Pacheco was granted service connection for his right leg and hip disability, and pelvic asymmetry, at disability ratings of 90% and 10%, respectively, as well as DEA and SMC. In August 2005, Mr. Pacheco was awarded an effective date for these benefits of January 23, 2002, the date.the Secretary received his request to reopen. In October 2008, Mr. Pacheco submitted additional service department records.
Mr. Pacheco sought an earlier effective date in' his appeal to the Board, which was denied, and he appealed to the Court. Before the Court in February 2011, the Secretary argued that remand was warranted for the Board to address whether the May 2001 VA medical examination record constituted an informal claim to reopen under § 3.157(b), and, on that basis, the Court remanded the issue of an earlier effective date in June 2011. Pacheco v. Shinseki, No. 10-1991, 2011 WL 2516195, at *2-*3 (U.S. Vet.App. June 24, 2011).
On remand, in the September 2011 decision now on appeal, the Board again denied Mr. Pacheco entitlement to an effective date prior to January 23, 2002, for his service-connected disabilities. The Board determined that the May 2001 VA treatment record “could not be considered a claim under 38 C.F.R. § 3.157(b)(1).” R. at 10. In so concluding, the Board stated that Mr. Pacheco “does not meet the threshold criteria” for § 3.157(b), because (1) a “formal claim for pension or compensation had not been allowed (or denied because the disability was noncompensa-ble),” and (2) he was not service connected for the disabilities at issue at the time of the May 2001 VA medical examination record. R. at 9-10. This appeal followed.
II. ANALYSIS
A. Earlier Effective Date Under 38 C.F.R. § 3.157(b) and (b)(1)
Mr. Pacheco argues that the Board should have awarded him an earlier effective date under § 3.157(b) and (b)(1). That provision states:
(b) Claim. Once a formal claim for pension or compensation has been allowed or a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree, receipt of one of the following will be accepted as an informal claim for increased benefits or an informal claim to reopen. In addition, receipt of one of the following will be accepted as an informal claim in the case of a retired member of a uniformed service whose formal claim for pension or compensation has been disallowed because of receipt of retirement pay. The evidence listed will also be accepted as an informal claim for pension previously denied for the reason the disability was not permanently and totally disabling.
(1) Report of examination or hospitalization by Department of Veterans Affairs or uniformed services. The date of outpatient or hospital examination or date of admission to a VA or uni *25 formed services hospital will be accepted as the date of receipt of a claim. The date of a uniformed service examination which is the basis for granting severance pay to a former member of the Armed Forces on the temporary disability retired list will be accepted as the date of receipt of claim. The date of admission to a non-VA hospital where a veteran was maintained at VA expense will be accepted as the date of receipt of a claim, if VA maintenance was previously authorized; but if VA maintenance was authorized subsequent to admission, the date VA received notice of admission will be accepted. The provisions of this paragraph apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established or when a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission.
Id. (emphases added).
Mr. Pacheco argues that he meets the requirements of the first sentence of subsection (b) because he (1) previously was awarded non-service-connected VA pension benefits and (2) filed a claim to reopen, and that he meets the last requirement of the last sentence of subsection (b)(1) because he filed his claim to reopen within one year of the May'2001 VA medical examination record. He therefore argues that the plain language of the regulation entitles him to an effective date of May 11, 2001, the date of his VA medical examination record.
The Secretary responds that the plain language of the regulation compels a different result. Specifically, he asserts that the language regarding claims for pension or compensation that have been “allowed” is paired with the language regarding an informal claim for “increased benefits,” and the language regarding claims for disability compensation that have been “disallowed” for the service-connected disability not being compensable in degree is paired with the language regarding an informal claim to “reopen.” Accordingly, under his interpretation of the first sentence of subsection (b), a previous allowance of pension can result in an earlier effective date for claims for increased benefits, but not for claims to reopen — which require a previous disallowance for the service-connected disability not being compensable in degree. Specific to Mr. Pacheco’s case, the Secretary argues that the May 2001 VA medical examination record cannot serve as a claim to reopen because his claim was not previously disallowed for being not compensable in degree.
Alternatively, should the Court find the plain language ambiguous, the Secretary argues that deference to his interpretation of the regulation is warranted, because it is not “‘plainly erroneous or inconsistent with the regulation’” and there is “‘no reason to suspect that it does not reflect the agency’s fair and considered judgment on the matter in question.’ ” Smith v. Nicholson, 451 F.3d 1344, 1350, 1351 (Fed.Cir.2006) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945), and Auer v. Robbins, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)).
If the meaning of § 3.157(b) and (b)(1) is clear from its plain language, that meaning controls and that is the end of the matter. See Tropf v. Nicholson, 20 Vet.App. 317, 320 (2006). On the other hand, if the meaning is unclear from the regulation’s plain language, deference will be afforded to the Secretary’s interpretation of his own regulation, so long as it is not plainly erroneous or inconsistent with the *26 regulation, and there is no reason to suspect that it does not reflect the Secretary’s fair and considered judgment on the ma1> ter in question. See Smith, 451 F.3d at 1350-51. When assessing the meaning of a regulation, words should not be read in isolation, but should be read in the context of the regulatory structure and scheme. King v. Shinseki, 26 Vet.App. 484, 488 (2014).
We find that the plain language of 38 C.F.R. § 3.157(b) and (b)(1) is subject to both parties’ proffered interpretations and, accordingly, we hold that the provisions are ambiguous. See Tropf, 20 Vet.App. at 321 n. 1 (stating that a regulation is ambiguous where “the application of the ordinary meaning of words and rules of construction to the plain language of the regulation fails to answer the question at issue”); see also Smith, 451 F.3d at 1350 (holding that a regulation is ambiguous where the language “still leaves the pertinent inquiry unresolved”); Bell Atl. Tel. Cos. v. FCC, 131 F.3d 1044, 1047-48 (D.C.Cir.1997) (holding that ambiguity is a conclusion reached when the question presented is not answered ’ “at the level of literal language”); Sears v. Principi, 16 Vet.App. 244, 250 (2002) (Steinberg, J., concurring) (finding 38 C.F.R. § 3.157(b) to be “a confusing tapestry” with unclear meaning).
As to Mr. Pacheco’s interpretation, taking the first sentence of subsection (b) and the last phrase of subsection (b)(1) in isolation supports his view that entitlement to earlier effective dates might be permissible on reopened compensation matters because of a previously allowed pension. But a reading of the plain language in the context of its structure could also fairly reflect the Secretary’s interpretation: that the previous pension allowance may form the predicate for an earlier effective date for an increased pension, but not a reopened compensation matter. See FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (“The meaning — or ambiguity— of certain words or phrases may only become evident when placed in context.”); Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“Ambiguity is a creature not of definitional possibilities but of statutory context----”); King, 26 Vet.App. at 488; see also 38 C.F.R. § 3.157(b) (2014) (second and third sentence). The literal language of the regulation could support either interpretation, and therefore it fails to answer the question at issue, such that it is ambiguous. See Smith, 451 F.3d at 1350; Tropf, 20 Vet.App. at 321 n. 1.
Given the ambiguity in the regulation, the Secretary’s interpretation will be afforded deference so long as it is not plainly erroneous or inconsistent with the regulation, and there is no reason to suspect that it does not reflect his fair and considered judgment on the matter in question. See Smith, 451 F.3d at 1350-51. Here, the Secretary’s interpretation must be understpod within the context of the history of § 3.157(b) and its predecessor, 38 C.F.R. § 3.216(a). Prior to 1951, § 3.216(a) provided for earlier effective dates for claims for increase based upon the submission of certain medical reports. In 1951, a second sentence was added, allowing earlier effective dates for claims to reopen as well, where the claim had been “disallowed for the reason that the service-connected condition was not 10 percent disabling in degree.” 38 C.F.R. § 3.216(a) (1952).
Such an addition reflects the Secretary’s desire to allow earlier effective dates for those whose previously service-connected condition worsened, but not those who had yet to establish service connection. Moreover, the specific language employed by *27 the Secretary reflects his practice at the time that claims for benefits for disabilities that were service-connected yet noncom-pensably disabling were considered “disallowed.” See Sears, 16 Vet.App. at 252 n. 3 (Steinberg, J., concurring) (providing a potential explanation for why, “at the time that the Secretary promulgated § 3.157(b) in 1961, he may have considered that claims for disability compensation were ‘disallowed’ when service- connection was found but a compensable rating was denied”).
Upon the promulgation of § 3.157(b) in 1961, the two separate sentences of § 3.216(a) were combined, but there is no indication that the logic behind the evolution of this language was abandoned. See 26 Fed.Reg. 1561, 1571 (Feb. 24,1961). In fact, the Secretary recently acknowledged in the Federal Register that he has never departed from an interpretation that the language of § 3.157(b) regarding claims to reopen is paired with the language regarding disability compensation claims that previously had been disallowed for service-connected disabilities being not compensable in degree. See VA Compensation and Pension Regulation Rewrite Project, 78 Fed.Reg. 71,042, 71,069 (Nov. 27, 2013) (“[Section] 3.157(b) has never applied to permit the reopening of a claim that was denied because the claimed injury or disease was not service connected.”).[2]
We note that the approach of considering a claim “disallowed” if a disability was service connected but noncompensable in degree is no longer practiced. See 78 Fed. Reg. at 71,069 (noting that “VA formerly considered claims where VA granted service connection for an injury or disease, but rated the disability as 0 percent disabling[,] as having been disallowed or denied,” but stating that “VA no longer considers such [noncompensably rated] claims disallowed” and proposing to remove the language at issue).[3] Accordingly, unlike the old practice, where a claim disallowed for not being compensable in degree had to be reopened when a claimant sought a compensable rating, the current practice is to allow a claim for increase in such circumstances. See Wingard v. Shinseki 26 Vet.App. 334, 346 (2013) (noting that Secretary’s assignment of noncompensable rating enables claimants to file claims for increase, rather than claims to reopen). Although the current practice renders the notion of “reopening” a noncompensably rated disability a nullity, this stems from the archaic language of the regulation, not from an arbitrary interpretation. Cf. Sears, 16 Vet.App. at 252 n. 3 (Steinberg, J., concurring). Significantly, in the context in which this language was originally implemented, the Secretary’s paired interpretation is understandable and not unreasonable.
*28 Moreover, contrary to Judge Davis’s contention in his separate opinion, the Secretary’s interpretation does not rob the last phrase of subsection (b)(1) of its meaning. See Roper v. Nicholson, 20 Vet.App. 173, 178 (2006) (noting that a regulation must be interpreted “so that effect is given to all its provisions” (internal quotation marks omitted)); 38 C.F.R. § 3.157(b)(1) (“The provisions of this paragraph apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established or when a claim specifying the benefit sought is received within one year from the date of such examination, treatment or hospital admission.” (emphasis added)). Given the Secretary’s interpretation, the last phrase of subsection (b)(1) would have an effect when, for example, a claimant who has a previous allowance of pension files a claim for increased pension; that claimant may obtain an earlier effective date if he submits his formal claim within one year of a related VA medical report, per that last phrase of subsection (b)(1). It also would have, an effect for a claimant who has been denied pension because his disability is not permanently and totally disabling.[4] See 38 C.F.R. § 3.157(b) (third sentence); VA Adjudication Procedures Manual M21-1MR, pt. Ill, subpt. II, ch. 2, § D.18.b.[5]
*29 Overall, although the Secretary’s interpretation of a paired structure is not compelled by the plain language of the regulation, it reasonably tracks the structure of the regulation and certainly is not inconsistent with it. See Cathedral Candle Co. v. U.S. Intern. Trade Comm’n, 400 F.3d 1352, 1364 (Fed.Cir.2005) (“While [the agency’s] interpretation is by no means compelled by the language of the regulation, it is not contrary to the express terms of the regulation, nor is it at odds with the purposes served by the regulation____[It] is reasonable and is therefore binding on us.”). Under his authority to promulgate rules and regulations, see 38 U.S.C. § 501(a), the Secretary is entitled to acknowledge informal claims and authorize earlier effective dates based on those informal claims — but it is not plainly erroneous to limit that authorization to certain types of claims or contexts, and the limit provided by the Secretary’s interpretation comfortably fits the structure and terms of § 3.157(b) and (b)(1), particularly in light of the regulatory history and consistent practice of the Secretary. See Auer, 519 U.S. at 461, 117 S.Ct. 905 (finding that the agency’s interpretation was not “plainly erroneous or inconsistent with regulation” where the critical phrase “comfortably bears the meaning the Secretary assigns”); 78 Fed.Reg. at 71,069.
As to whether the Secretary’s interpretation reflects his fair and considered judgment on this matter, Mr. Pacheco has not noted any application • of § 3.157(b) and (b)(1) by the Secretary that is inconsistent with the Secretary’s proffered interpretation, and we are not aware of any. See Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal); see also 78 Fed.Reg. at 71,069. We do note that the Secretary argued for a remand of this case in 2011 for the Board to discuss the potential applicability of § 3.157(b). But agreeing that remand is warranted for a Board discussion of § 3.157(b) is not the equivalent of conceding Mr. Pacheco’s entitlement to an earlier effective date based on § 3.157(b). The Board must discuss potentially applicable regulations, and issues reasonably raised by the record, independent of whether those regulations and issues will ultimately result in entitlement to a particular benefit. See Schafrath v. Derwinski, 1 Vet.App. 589, 592-93 (1991) (holding that the Board must discuss all potentially applicable -provisions of law and regulation); see also Robinson v. Peake, 21 Vet.App. 545, 552 (2008) (holding that the Board must address all issues raised by the claimant or reasonably raised by the record), aff'd sub nom. Robinson v. Shinseki, 557 F.3d 1355 (Fed.Cir.2009). Succinctly stated, the Secretary’s previous arguments for remand in'this case do not cause us to suspect a lack of fair and considered judgment in the Secretary’s current interpretation.
Accordingly, we hold that deference is warranted to the Secretary’s interpretation of § 3.157(b) and that the Board’s determination that § 3.157(b) was not applicable to the effective date of Mr. Pacheco’s award of disability compensation is not in violation of law or otherwise clearly erroneous. See Gilbert v. Derwinski, 1 Vet.App. 49, 52 (1990) (“‘A finding is *30 “clearly erroneous” when ... the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948))). Although Mr. Pacheco desires an earlier effective date for an award based on a claim to reopen, there is no dispute that he did not have a claim disallowed for the reason that the disability was not compensable in degree. Accordingly, he fails to meet the criteria of § 3.157(b).
We note that the Board erroneously stated that pension had not been allowed in his case, but we find such a misstatement not prejudicial because — as held above — the Secretary’s reasonable interpretation of § 3.157(b) and (b)(1) provides no relationship between Mr. Pacheco’s previous allowance of pension and the effective date to be assigned to an award made as a result of his claim to reopen his claim for disability compensation. See Soyini v. Derwinski, 1 Vet.App. 540, 546 (1991) (holding that a remand is not required when it “would result in this Court’s unnecessarily imposing additional burdens on the [Board and the Secretary] with no benefit flowing to the veteran”); see also Shinseki v. Sanders, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (holding that the appellant bears the burden of demonstrating prejudice on appeal).
B. Earlier Effective Date Under 38 C.F.R. § 3.156(c)
When the Secretary determines that a veteran is entitled to benefits, the general rule is that the award becomes effective on either the date VA received the veteran’s claim (or his claim to reopen) or the date he or she became eligible for the benefit, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400 (2014). However, 38 C.F.R. § 3.156(c) provides an exception to this general rule: When the Secretary decides a claim, but later receives “relevant official service department records” that existed but had not been associated with the file at the time it was decided, the Secretary “will reconsider the claim.” 38 C.F.R. § 3.156(c)(1) (2014).[6] If the Secretary awards benefits “based all or in part” on those late-arriving official service department records, then the award “is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later.” 38 C.F.R. § 3.156(c)(3); see Mayhue v. Shinseki, 24 Vet.App. 273, 279 (2011) (“[A] claimant whose claim is reconsidered based on newly discovered service department records may be entitled to an effective date as early as the date of the original claim.”).
Mr. Pacheco argues that, under § 3.156(c), he is entitled to an effective date of February 28, 1974, the date VA received his original claim for benefits for his disabilities. After all, in July 1974, when VA denied his claim, it did not yet have access to the Army records it obtained in 1978 or 2008 showing that he had been hospitalized and sick during 1943 (R. at 1288-1301, 196-200), or the 1998 NPRC letter summarizing those records (R. at 913). Mr. Pacheco argues that, because those records later contributed to his suc *31 cessful claim for benefits for his disabilities, § 3.156(c) mandates an effective date going back to his original claim on that issue.
We note that the service department records obtained in 2008 are not completely decipherable. See R. at 196-200. In any event, the Board did not determine whether the assignment of an earlier effective date based on those records, which were associated with the claims file after the December 2004 grant of service connection for residuals of a right leg and hip injury, would constitute “[a]n award based all or in part” on those records as required by § 3.156(c)(3). Despite receipt of potentially new service department records during the pendency of Mr. Pacheco’s appeal of the assigned effective date of benefits, the Board did not address § 3.156(c) or whether the service department records received in 2008 were new and material. Because a decision on that issue would require factfinding generally outside our jurisdiction, see 38 U.S.C. § 7261; Servello v. Derwinski, 3 Vet.App. 196, 200-01 (1992) (“The role of an appellate court is not to serve as a de novo factfinder.”), we will remand this matter to allow the Board to decide it in the first instance. See Maggitt, 202 F.3d at 1377 (Court has discretion to remand for initial adjudication an issue raised for the first time on appeal).
C. Clear and Unmistakable Error (CUE)
Finally, Mr. Pacheco argues that a prior, unidentified Board decision contains CUE because, at the time of that decision, certain medical reports were not included in the record and the evidence shows that he was entitled to additional compensation based on his hip replacement surgery. Because these issues were not raised to or addressed by the Board in the decision on appeal, we lack jurisdiction to consider them. See 38 U.S.C. § 7111(e) (stating that a request for revision of a Board decision based on CUE shall be submitted directly to the Board); Andre v. Principi, 301 F.3d 1354, 1361 (Fed.Cir.2002) (“[E]ach ‘specific’ assertion of CUE ... must be the subject of a decision by the [Board] before the Veterans Court can exercise jurisdiction over it.”); Russell v, Principi, 3 Vet.App. 310, 315 (1992) (en banc) (noting that the “necessary jurisdictional ‘hook’ ” for the Court is “a decision of the [Board] on the specific issue of [CUE]”). Mr. Pacheco is free, however, to file a motion for revision of the unidentified Board decision on the basis of CUE at any time. See 38 C.F.R. § 20.1404 (2014) (filing and pleading requirements for CUE motion).
III. CONCLUSION
Upon consideration of the foregoing, the Court’s January 16, 2014, opinion is WITHDRAWN, and the September 22, 2011, Board decision is SET ASIDE and the matter REMANDED for further adjudication.
PER CURIAM. PIETSCH, Judge, filed a concurring opinion. KASOLD, Chief Judge, filed an opinion concurring in part and dissenting in part, in which HAGEL, MOORMAN, and LANCE, Judges, joined. LANCE, Judge, filed an opinion concurring in part and dissenting in part, in which KASOLD, Chief Judge, and HAGEL, Judge, joined. DAVIS, Judge, filed an opinion concurring in part and dissenting in part, in which SCHOELEN, BARTLEY, and GREENBERG, Judges, joined. GREENBERG, Judge, filed an opinion concurring in part and dissenting in part.

. Mr. Pacheco initially represented himself in this matter and filed his own brief, but secured pro bono counsel for oral argument, which was held on November 6, 2013, before a panel of the Court.

. We share Judge Greenberg’s view that deference can be a dangerous permission slip for the arrogation of power by administrative agencies, post at 42-43, but such concern is unfounded here, where the Secretary has maintained consistency in interpreting and applying his own regulation. Moreover, this consistency reflects that the Secretary’s interpretation is his fair and considered judgment on this matter, contrary to the view expressed in Judge Davis's separate opinion.

. Although Judge Davis’s separate opinion searches to find an inconsistency in the Secretary’s statements, the Secretary stating in 1993 that it has been his “consistent practice” to assign a noncompensable rating for service-connected disabilities not compensable in degree, Zero Percent Disability Evaluations, 58 Fed.Reg. 28,808, 28, 808-09 (May 17, 1993), in no way contradicts the Secretary also acknowledging that there was a historical practice of considering such claims disallowed for purposes of reopening. See 78 Fed. Reg. at 71,069.

. The Secretary’s en banc motion acknowledged these possible applications of the regulation, despite Judge Davis's separate opinion asserting otherwise. See Secretary's En Banc Motion at 3. Moreover, the Secretary's statement in the Federal Register did not "con-ceden” that claims for increased pension do not fit into the framework of § 3.157(b), post at 38; rather, the Secretary stated that VA has “never” excluded claims for increased pension from this regulation, and he proposed alteration of the regulatory language "to avoid such misapplication.” 78 Fed.Reg. at 71,069.

. The last sentence of § 3.157(b)(1) was added for clarification in 1987 based on a VA General Counsel unpublished opinion. See Medical Reports as Informal Claims/Recoupment of Separation Pay, 52 Fed.Reg. 3,286 (Feb. 3, 1987). The Secretary recently explained that the addition was aimed at clarifying that the view prior to 1962 — that a claimant service connected for one disability would file a claim for increase if he desired service connection for a separate disability — had been long extinct. See 78 Fed.Reg. at 71,069 (noting that language supporting such a view "has long since been repealed”). Accordingly, although Judge Davis’s separate opinion categorizes the term "increased benefits” in § 3.157(b) as broad, and it indeed had a broad meaning prior to 1962, the addition of the last sentence of subsection (b)(1) made clear that such a broad meaning did not survive 1962, and — to the extent that the VA General Counsel was confronted with lingering questions over the scope of that term — it is not "incomprehensible” for such clarification to be provided in 1987. Post at 41 n. 14.
(We shall have to agree to disagree with Judge Davis's comment in his separate opinion that our characterization of the Secretary's recent statement in the Federal Register is "inaccurate.” Post at 40-41. The Secretary was specifically discussing the circumstances that the last sentence of subsection (b)(1) "was intended to govern.” 78 Fed.Reg. at 71,069. As the Secretary's statement addresses the intentions behind the last sentence of subsection (b)(1), it seems more inaccurate to say, as Judge Davis’s separate opinion does, that the Secretary’s statement "do[es] not include any discussion regarding the 1987 amendment" that added the last sentence of subsection (b)(1). Post at 40-41 (emphasis in original).)
Furthermore, although Judge Davis’s separate opinion cites Transmittal Sheet 744 for the proposition that in 1987 VA "intended to make clear that the regulation was to apply to claims for service connection for new conditions and not merely to claims for increases for disabilities already service connected” (post at 41), we do not read the transmittal sheet as conveying the Administrator's intention to contravene the plain language of the regulation, which expressly limits the applicability of § 3.157(b) to claims for increase or claims to reopen. (Although the regulation is ambiguous on the question at issue — whether *29 a previous allowance of pension affects the effective date of the award of a reopened compensation matter — it is plain that § 3.157(b) applies only to claims for increase or claims to reopen. Contra post at 41 n. 15.) Rather, we read the transmittal sheet as simply noting the Administrator's assumption that claimants generally desire increased benefits when a medical report chronicles a worsening service-connected disability, and that such an assumption is not extended to other circumstances unless specifically followed up by identification of the benefit sought (e.g., increased pension).

. The regulation states in relevant part:
(1) Notwithstanding any other section in this part, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim notwithstanding paragraph (a) of this section.
38 C.F.R. § 3.156(c)(1). Paragraph (a) of § 3.156 defines new and material evidence. Generally, a veteran must submit new and material evidence to reopen a finally adjudicated claim. 38 C.F.R. § 3.156(a).